Pfiffner v. Krapfel.

Reversed.

PFIFFNER v. KRAPFEL *et al.*

1. Fraud: IN PROCURING ACCEPTANCE OF SERVICE: JUDGMENT. Where acceptance of service of a cross-petition filed in an action is procured from a party thereto. who is ignorant of its contents, through the false representations and fraud of the adverse party, a judgment rendered upon such acceptance of service may be impeached for fraud.

2. Judgment: PLEADING: TAX SALE: HOMESTEAD. It is the plain in tent of our statute that parties shall not claim as the fruits of their litigation that which was not by the fair and obvious import of the pleadings put in issue and litigated between them.

3. —— It seems that the right of redemption of a married woman under a tax sale of property in which she has an interest, is not cut off by a judgment on a cross-petition making her and her husband parties, when such cross-petition contains no allegations putting in issue or referring to her right of redemption or any interest she has in the property, but merely sets up petitioner's tax deed and asks judgment against the defendants, establishing petitioner's right thereunder to the premises, and that he be put in possession thereof.

4. Tax sale: HOMESTEAD: REDEMPTION BY MARRIED WOMAN. The wife has such an interest in the homestead as entitles her to redeem the same from tax sale. And this right of redemption continues, under the statute, until one year after she shall have become discovert.

28  27
82  413

28  27
119  282

28  27
142  392

*Appeal from Dubuque District Court.*

MONDAY, OCTOBER 11.

IN the month of July, 1847, the plaintiff Anna M. Pfiffner and J. A. Pfiffner intermarried, and have ever since lived together as husband and wife. In 1851 J. A. Pfiffner purchased the south one-fifth of lot 496 in the city of Dubuque, being less than one-half acre; and he and his wife and their family have ever since occupied the same as their homestead, and still so occupy it.

On the 14th day of April, 1857, J. A. Pfiffner executed a mortgage upon said property to one Moritz Vollmer to secure his note for $576; the mortgage was duly recorded the day of its date. The wife, Anna, did not join in this mortgage. On the 22d day of September, 1857, the said J. A. Pfiffner executed another mortgage on the same property to one J. P. Theviot, to secure the payment of his note of that date for $354; which was recorded the same day. The wife Anna did not join in this mortgage. On the 30th day of September, 1858, the said J. A. Pfiffner and Anna M. Pfiffner, his wife, executed another mortgage upon the same property to one Andreas Krapfel, to secure the payment of J. A. Pfiffner's note for $270. This mortgage was also duly recorded December 29th, 1858, and the note and mortgage were the same day sold to John W. Krapfel. On the first day of May, 1861, the property was sold by the treasurer of Dubuque county for the delinquent taxes of 1859; and on the 24th day of September, 1864, no redemption thereof having been made by any one, and the said Theviot having paid all subsequently accruing taxes, the treasurer of said Dubuque county executed a tax-deed therefor to said Theviot in the manner prescribed by law. This deed was duly recorded the day of its date.

On the 13th day of October, 1864, in the District Court of Dubuque county, the said John W. Krapfel com-

·menced his action to foreclose his mortgage, and made as parties defendants thereto, the mortgagors, J. A. Pfiffner and Anna M. Pfiffner, his wife, Moritz Vollmer and P. J. Theviot; all except Vollmer were personally served with notice, and he by publication. Theviot filed an answer denying the allegations of the petition, and "by way of cross-bill against plaintiff and all the other defendants he states" his mortgage and tax deed, and annexes copy of each, and that he had paid the subsequent taxes, amounting to one hundred and fifty dollars, and concludes as follows: "Wherefore this defendant prays that he may have judgment against said plaintiff and all the other defendants, establishing his right under said tax-deed to said premises, and that he be put in possession thereof; and, failing in this, he prays that said mortgage be declared the first lien on said premises, and that it be foreclosed according to law." Service of this answer and cross-bill was accepted by J. A. Pfiffner and by Anna M. Pfiffner in writing indorsed thereon; the latter signing the same by her mark.

Neither J. A. Pfiffner or his wife Anna M. Pfiffner made any defense to the original petition or to the cross-bill. Nor did the plaintiff Krapfel or defendant Vollmer make any defense to the cross-bill. On May 11th, 1865, default was entered as to all of the defendants in the cross-bill, and on the same day Theviot and wife conveyed the property by quit-claim to Krapfel, the plaintiff. On the 25th day of May, 1865, a judgment was rendered in the cause in favor of plaintiff Krapfel, against J. A. Pfiffner, for the amount of his mortgage debt, $422.43, and costs; and in favor of Theviot against J. A. Pfiffner for the amount of his mortgage debt, $591.18, and costs; "and it further appearing to the satisfaction of the court that P. J. Theviot holds the legal title to the property in the petition and cross-petition described, under a deed

from the treasurer of Dubuque county, Iowa, bearing date on the 24th day of September, 1864, it is ordered, adjudged and decreed, that the said P. J. Theviot hold the said lot, free and discharged from all liens, claims or incumbrances held or claimed by any one or more of the parties to this suit at the date of the said treasurer's deed, or prior thereto; and that said parties, that is to say, John W. Krapfel, J. A. Pfiffner, Anna M. Pfiffner, his wife, and Moritz Vollmer, are hereby forever barred and foreclosed from setting up any claim, right or interest in or to the premises herein described, accrued before or up to the said 24th day of September, 1864, and that the title of said P. J. Theviot be and is hereby quieted and confirmed." Afterwards, and in February, 1866, the defendant, Moritz Vollmer, who had been served by publication only, appeared, and on his motion the judgment was opened as to him, and upon trial of his claim in the August following, final judgment was rendered against him.

On November 20th, 1867, John W. Krapfel brought his ordinary action for the recovery of the real property in controversy, against J. A. Pfiffner; and, by amendment, Anna M. Pfiffner was also made defendant. They answered, denying plaintiff's title; and also set up equitable defense of the right of Anna M. to redeem from the tax sale and deed, because of the property being a homestead, etc., and setting up fraud between Krapfel and Theviot in obtaining the judgment under which Krapfel claimed title. On the 21st of November, 1867, she filed her petition to modify the judgment in favor of Theviot, on his cross-petition in the former suit, under subdivision 5 of section 3499, *et seq.*, of Revision, and Krapfel and Theviot were made parties defendant. The defendants deny the right of Anna M. to have the judgment modified.

On the 23d day of November, 1867, Anna M. Pfiffner and J. A. Pfiffner, having first tendered the money, filed their petition to redeem the lot in controversy from the tax sale and deed, because of Anna M.'s interest in the homestead property; and she, being a married woman, had one year after becoming dis-covert to redeem, under Revision, section 779. Krapfel, Theviot and wife were made defendants to this petition, and they deny the right to redeem, claiming that such right, if it ever existed, was barred by the decree in the former suit.

All three of these causes were together referred, by consent, to D. C. Cram, Esq., to take proofs and report his conclusions of fact and law thereon. The referee made his report, giving to Anna M. Pfiffner the right to redeem from the tax sale and deed; dismissing, with costs, her petition to modify the judgment in the former suit; and dismissing, with costs, Krapfel's suit for the recovery of the real property.

On exceptions to the report, the District Court set the same aside, rendered judgment in favor of Krapfel, in the action brought by him, for the recovery of the real property, and dismissed, with costs, the petition of Anna M. Pfiffner and husband to redeem.

This appeal is taken by Anna M. Pfiffner and J. A. Pfiffner, and brings up all three of the cases for decision.

*Shiras & Van Duzee*, and *John Doud, Jr.*, for the appellants.

*W. J. Knight* and *S. M. Pollock*, for the appellee.

Cole, J. — We first turn our attention to the case involving the question of the right of Anna M. Pfiffner to 1. Fraud: in redeem from the tax sale and deed. If she procuring acceptance of has this right, notwithstanding the judgment service: judgment. in favor of Theviot on his cross-petition, then

it follows, as a matter of course, that the plaintiff Krapfel cannot recover the real property in his action brought therefor; and the question made by her petition, to modify the judgment so as to allow her to redeem, becomes immaterial, since she would have that right without any modification.

The right to redeem is claimed upon two bases of fact: First, that there was a fraudulent combination between Krapfel and Theviot to deprive plaintiffs of their homestead; that the latter procured her acceptance of service upon his cross-petition in ignorance of its contents, by false representations, to the effect that he was thereby aiding her to defeat Krapfel's mortgage, in order to save the homestead for her. Second, that the cross-petition of Theviot contains no allegation in reference to Anna M. Pfiffner's right to redeem the property, nor any averment calculated to apprise her that such right was to be called in question; that the prayer of the cross-petition did not ask that such right of redemption be barred, nor does the judgment, in terms, or otherwise, profess or purport to bar such right. The appellants also claim, as a matter of law, that, since the right to redeem property sold for taxes is expressly given by statute to a married woman, and such right in this case had become fixed and vested, the court could not, any more than the legislature, take away or cut off that right; in other words, the court had no power or jurisdiction to do so.

As to the first basis of fact as claimed by appellants, it may be remarked that while there is but little, if any thing, in the direct testimony of the witnesses tending to show actual fraud on the part of Krapfel or Theviot, yet there are facts and circumstances, disclosed in the entire record of the case, tending to show a combination between them, effectuating a surprise and fraud upon Anna M. Pfiffner. Some of these may be mentioned : Mrs. Pfiffner

is shown to be an uneducated woman, of German birth, and having but very limited knowledge of our language; not able to fully understand ordinary conversation. She accepted service of the cross petition at the instance of Theviot's attorney, and without any just apprehension of its meaning, purport, purpose. or effect ; that she did so under the belief that Theviot was her friend, and was seeking by the proceeding to save and secure her homestead for her. Krapfel, who had the only mortgage that was a lien on the premises, and who had brought suit to foreclose it, made no defense to the cross-petition by Theviot to foreclose his mortgage and make it prior to Krapfel's, when in law it was no lien at all. On the very day the default was entered against all the parties to Theviot's cross petition, Krapfel buys Theviot's interest and takes a quit-claim deed therefor ; and two weeks thereafter a decree or judgment was rendered in favor of Theviot, forever barring Krapfel's right or interest in the premises.

These facts taken in connection with the following, to wit : that the cross petition contains no mention of, or reference whatever to, the homestead rights, or 2. JUDGMENT: the right of redemption belonging to Mrs. pleading: tax sale. Pfiffner; that it makes no allegation in relation to any interest of hers in the property, and asks no relief as against any claim or interest of hers ; that the judgment itself does not refer to any interest or claim of hers, and only bars " any claim, right or interest" which " accrued before or up to the date of the treasurer's deed," while the deed itself expressly reserves and is made subject to "all the rights of redemption provided by law ;" all these when taken together, we hold, do show a combination and purpose to cut off the rights of Mrs. Pfiffner under color of legal proceedings, without advising her of the intent and effect thereof. In other words, the

cross-petition, prayer and decree were but a masked battery set and used to capture Mrs. Pfiffner's homestead rights.

Our system of pleading is essentially a fact system, intended to require the parties in judicial proceedings to state the facts of their claim and advise the opposite parties of the true nature and object of the suit. It is against the spirit and plain intent of our Code to allow parties to claim as fruits, of their litigation, that which was not by the fair and obvious import of the pleadings put in issue and litigated between them. This, we have already substantially held in *Moomey* v. *Maas* (22 Iowa 380), where a widow who had not joined in the mortgage was held not barred from asserting her dower in certain real estate, by reason of the mortgage foreclosure decree and sale of the same property, although she was a party defendant thereto and duly served with notice. So in *Standish* v. *Dow et al.* (21 Iowa, 363), it was held that a senior incumbrance by trust deed was not barred by the foreclosure decree of a junior mortgage, although the *cestui que trust* was a party, and duly served with notice of such foreclosure proceedings.

The property in controversy being the homestead, the wife of the owner has such an interest in it, under our 4. TAX SALE: statute, as entitles her to redeem the same homestead: redemption. from tax sale. *Adams* v. *Beale et ux.*, 19 Iowa, 61. And this right of redemption continues till one year after she shall become discovert. Rev. § 779.

This effectually disposes of all three of the cases, and substantially, in result, the same as the report of the referee. The judgments will therefore be reversed, and remanded with directions to the District Court to render judgment in accordance with and upon the report of the referee.

Reversed.