## Case No. 9,896.

### The MOXY.

[See Case No. 9,894.]

MOYER (DIXON v.). See Case No. 3,931.

## Case No. 9,897.

### MOYNAHAN v. WILSON.

[2 Flip. 130; 6 Cent. Law J. 28; 5 Reporter, 329; 26 Pittsb. Leg. J. 16.] [1]

Circuit Court, E. D. Michigan. Dec. Term, 1877.

REMOVAL OF CAUSES—WAIVER—FRAUD IN PROCURING SERVICE OF PROCESS—REPLEVIN.

1. The act of filing in a state court a petition for the removal of a case to the circuit court of the United States is no waiver of a fraud in procuring service of process.

[Cited in Woolridge v. M'Kenna, 8 Fed. 657.]

2. Accordingly where property was fraudulently decoyed within the jurisdiction of a state court and seized upon a writ of replevin, and the defendant at once removed the case to a federal court and moved to set aside the service of the writ: Held, the motion did not come too late.

On motion to dismiss suit and for the return of property replevied. This was an action of replevin [by Matthew J. Moynahan against James Wilson] commenced in the circuit court for the county of Wayne, on the 7th day of November, 1877, and removed to this court on the 13th. Upon the same day a certified copy of the record was filed in this court, and a motion made to dismiss the suit upon the ground that the property replevied [viz. the racing-mare "Bay Sallie"] [2] was decoyed within the jurisdiction of the state court by a fraudulent device or trick of the plaintiff.

L. T. Griffin, for plaintiff.
M. E. Crofoot, for defendant.

BROWN, District Judge. Most of the statements contained in the affidavits read upon this motion relate to the merits of the controversy, and, therefore, have no bearing here. It appears that the plaintiff and one Demass, when in Indianapolis, made a bargain with one Gosnell, the then owner of the mare, to bring her here with the intention of matching her against a horse known as "Tom Hendricks" and that five hundred dollars were deposited in Gosnell's hands, either as security for the safe return of the mare, or as a personal loan from the plaintiff. Gosnell claims that the agreement was to be cancelled if, in the mean time, he could sell the mare, and that he did sell her to Wilson with the consent of all parties, the money being returned to Demass. On the other hand, it is claimed by the plaintiff that he was to have the use of her for a year, to race her as he liked, and to divide the profits with Gosnell; that he knew nothing of the sale to Wilson, and that Demass received back the $500 after plaintiff had left Indianapolis, and without authority from him. All this is immaterial to the present controversy; so likewise are the affidavits with respect to the value of the mare, and to the propriety of driving her in harness. I am satisfied she is worth more than five hundred dollars, and consequently that the court has jurisdiction.

On Demass returning to Detroit, plaintiff, finding his agreement had fallen through, and that the mare had been sold to Wilson, the defendant, and had passed into his possession, wrote defendant the following letter: "I am very sorry that you took 'Bay Sallie' away from Demass, as I have made a match against Hendricks to pace next week for five hundred dollars a side; the money is up, and as John (Demass) says you would bring the mare if matched, please ship her at once to Detroit, as there will be a great betting race. Don't fail to send her; if you don't send her, I lose the money that is now up, so don't fail." To Gosnell he wrote a similar letter adding, "Write or telegraph me when she will be here, as we have not fixed the day to pace until I hear from you." Supposing that statement to be true, defendant at once shipped the mare to Detroit in charge of an hostler, and on arriving here, plaintiff took possession of her, paid for her transportation and sent her to a stable; he then took the advice of counsel and, acting upon such advice, re-

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission. 5 Reporter, 329, and 26 Pittsb. Leg. J. 16, contain only partial reports.]

[2] [From 6 Cent. Law J. 28.]

turned her nominally to the possession of defendant, who soon after arrived here himself, then demanded her of him, and upon defendant refusing to deliver her up, took out this writ of replevin. It appears from the affidavit of Mr. Greusel, owner of the "Tom Hendricks," that his horse had not been matched against the mare at all, nor had he made any agreement with the plaintiff, to pace with the "Bay Sallie," nor had he nor any one for him, to his knowledge, put up any money for such a race. Indeed, Moynahan admits that the only foundation for his letter was, that he had some talk with the owner of "Tom Hendricks" about making a match if he could get his friends to put in with him, and stated that he would see plaintiff again, and that before seeing Greusel again he wrote the letters in question, although he says he had been informed by friends of Greusel there would be no trouble in making a match for five hundred dollars, and "deponent believes that such was the fact, and now expects that he will have no difficulty in making the match." In short, the letters were false from beginning to end, and were evidently intended as a device to get the horse to Detroit. I am satisfied, too, that the subsequent surrender to defendant was solely for the purpose of anticipating a writ of replevin from him, and getting her into his own possession under the writ in this case.

It is perfectly well settled that where a defendant is brought within the process of the court by a trick or device of this kind the service will be set aside and he will be discharged from custody. Union Sugar Refinery v. Mathiessen [Case No. 14,397]; Wells v. Gurney, 8 Barn. & C. 769; Snelling v. Watrous, 2 Paige, 315; Williams v. Bacon, 10 Wend. 636; Metcalf v. Clark, 41 Barb. 45; Stein v. Valkenhuysen, El., Bl. & El. 65; Williams v. Reed, 5 Dutch. [29 N. J. Law] 385; Carpenter v. Spooner, 2 Sandf. 717; Pfiffner v. Krapfel, 28 Iowa, 27.

Though these were all actions in personam where the defendant was himself discharged, I see no reason why the same principle will not apply to a case of replevin where property is fraudulently decoyed within the jurisdiction of the court.

A serious question, however, remains to be considered: Plaintiff insists that filing the petition for removal in the state court was an appearance, and a waiver of any defect in the service of the writ. That the filing of a petition for a removal is an appearance within the meaning of the judiciary act of 1789 [1 Stat. 73], requiring the petition to be filed "at the time of entering his appearance in the state court" was decided, I think correctly, in Sweeny v. Coffin [Case No. 13,686]. A like ruling was made by a majority of the court in the case of Chatham Nat. Bank v. Merchants' Nat. Bank, 1 Hun, 702.

While I have little doubt that filing this petition is a sufficient appearance to answer the requirements of the judiciary act, my impression is it cannot be considered as a general appearance in the cause. An appearance has been defined to be a submission to the authority of the court in the case, whether coerced or voluntary, or an act importing that the defendant submits the determination of a material question in his case to the judgment of the court. Cooley v. Lawrence, 5 Duer, 610.

It has frequently been held that a motion to dismiss a case for want of jurisdiction is not an appearance, the very act of making the motion implying that the party does not submit himself to the authority of the court. Sullivan v. Frazee, 4 Rob. [N. Y.] 616; Decker v. New York Belting & Packing Co. [Case No. 3,727]; Commercial Bank v. Slocum, 14 Pet. [39 U. S.] 60; Ulmer v. Hiatt, 4 G. Greene, 439, 440. And I am strongly inclined to think that filing a petition in the state court, which, according to the better authority, requires no action on the part of that court, and deprives it instantly of its jurisdiction of the case, cannot be considered a general appearance in the cause.

But whether this be so or not, I am satisfied that the petition for removal should not be construed as a waiver of a fraud in procuring the service of the writ. While it is true that a general appearance is a waiver of irregularity in the writ or its service, none of the authorities go to the extent here claimed. In 3 Chit. Gen. Prac. 522–525, an important and suggestive distinction is taken between mere irregularities and such defects as render the proceedings a total nullity and altogether void; for although an irregularity may be waived, if not objected to within a reasonable time, it has been considered to be a general rule that a nullity or essential defect may be taken advantage of at any subsequent stage of the action. In Taylor v. Phillips, 3 East, 155, it was held "that service of process on Sunday was absolutely void by statute and could not be made good by any subsequent waiver of the defendant by his not objecting until after a rule to plead given." And to the same effect is Morgan v. Johnson, 1 H. Bl. 628. A large number of other cases are cited in Chitty, which apparently proceed upon the same ground. While I think the American courts would not go so far in holding that material defects could not be waived, the distinction between irregularities and nullities is noticed and approved in several American cases. In U. S. v. Yates, 6 How. [47 U. S.] 605, it was said, that leave to withdraw an appearance will not authorize a motion to dismiss for want of citation, nor for mere irregularity in its service, provided the appeal is in other respects regularly brought up and authorized by law. "The citation is merely notice to the party and his appearance in person or by attorney is an admission of notice on the record and he cannot afterwards withdraw it; but the appearance does not preclude the party from moving to dismiss for the want of jurisdiction or any other sufficient ground except for

the one above mentioned." So in Carroll v. Dorsy, 20 How. [61 U. S.] 204, it was held that a defect in the writ of error or an omission to file a transcript of the record at the term next succeeding the issuing of the writ, were fatal errors, notwithstanding a general appearance. And the earlier case was cited and affirmed. The court held that the appearance of the defendants without making a motion to dismiss cured nothing but the defect in the citation. See, also, Buckingham v. McLean, 13 How. [54 U. S.] 150.

There is, undoubtedly, a class of cases which hold that where the state court has acquired jurisdiction by attachment of property, the defendant, on removing, will not be permitted to claim that the case should be dismissed, because the federal court would not have had jurisdiction if the case had been originally commenced there. This was really all that was decided in Sayles v. Northwestern Ins. Co. [Case No. 12,421]. though there are sentences in the opinion which seem to conflict with the views here expressed. So in Bushnell v. Kennedy, 9 Wall. [76 U. S.] 387, it was held, that after removal defendant could not defeat the action by showing it was not originally cognizable in the federal court. To the same effect is Barney v. Globe Bank [Case No. 1,031].

These cases hold that if the defendant, not being compelled to appear in the state court, does actually appear and remove the case, he thereby submits to the jurisdiction and cannot raise in this court a defense he could not raise in the state court; but in the case under consideration the defendant was compelled to make this motion somewhere or lose the benefit of the defense. If he allowed the case to go to judgment it would probably be too late, the fraud rendering the service of the writ not void but voidable. Advantage must undoubtedly be taken of the defect within a reasonable time, but it does not follow that an act which for some purposes may be considered an appearance and possibly sufficient to operate as a waiver of previous irregularities, should be considered as confirming a fraud in the service of the writ. It is a general rule for which numerous cases may be cited, that in order to confirm a fraud the party injured must not only do some act manifesting an intention to confirm, but must be aware of the legal consequences of the act. Indeed, there seems to be in cases of this class a well-settled exception to the general maxim "Ignorantia legis neminem excusat." Kerr, Fraud, 296; . Murray v. Palmer, 2 Schoales & L. 486; Cockerell v. Cholmeley, 1 Russ. & M. 425; Cumberland Coal & Iron Co. v. Sherman, 20 Md. 117; Cherry v. Newsom, 3 Yerg. 369; Stump v. Gaby, 2 De Gex, M. & G. 623. If this rule be applicable here (and I see no reason why it is not) the case is freed from all doubt. There is not the slightest reason for supposing the defendant intended to waive the fraud by removing the case. Indeed, the promptness with which the removal was effected, and this motion made, precluded the idea either of an intention to confirm or a belief that such was the legal effect of his act.

Again: It seems to me inconsistent with the general scope and purpose of the removal acts to compel a party to litigate any portion of his case in a state court, or lose his defense pro tanto. Under the judiciary act, if the defendant had made this motion in the state court, he would thereby have waived his right of removal, since it was necessary to file his petition at the time of entering his appearance; and while, under the act of 1875 [18 Stat. 470], the removal may be made before, or at the term at which the cause could be first tried, and before the trial thereof, it is provided in section 6, that in case of removal the circuit court shall proceed therein as if the suit had been originally commenced in the federal court.

In Lamar v. Dana [Case No. 8,005], a suit was brought in the state court for an arrest made by the defendant, during the Rebellion, by authority of the president, and the plaintiff move to remand on the ground that the jurisdiction of the federal court over the case had been taken away by the act of 1867 [14 Stat. 558]. It was held that, notwithstanding this act, the parties could raise any question in the federal court after removal which they could raise if the cause had been originally commenced here, and it was said by Judge Woodruff, "the removal places the case in the same position here as if so (originally) brought. This operates in this case as in all other cases so removed. Had the cause been brought here in the first instance, all legal defenses would have been available to the defendant, whether they went to jurisdiction to inquire, or were in bar of the action on any ground. All that the removal has done is to change the tribunal which is to pass upon the questions involved." See. also, Gier v. Gregg [Case No. 5,406]; McLeod v. Duncan [Id. 8,898].

There is no doubt that this motion might have been made in the state court, and that the decision of the state court thereon would have been res adjudicata; but I think the defendant is not compelled to split up his defense in this way. There is no reason to suppose that the removal acts were not aimed at the possible partiality of local judges as well as local influence upon juries, and any construction which would deprive litigants of a judicial interpretation of the law in this court, as well as a determination of the facts involved, would, to that extent, defeat the intention of congress. The power of removal is not limited to cases where only questions of fact are involved, and this court would clearly not be called upon to remand if the sole question in the case were one of law.

Without deciding how far a petition for removal is an appearance, or how far a general appearance would operate as a waiver of a fraud in service of a process, it is suf-

ficient here to say that I do not think that the petition for removal is a waiver of the right of the defendant to insist that the service of the process was procured by a fraudulent device or trick.

But I think the plaintiff has made his motion too broad, in asking that the writ itself be set aside, and vacated. Service of the writ must be set aside, and the plaintiff ordered to return the property to the defendant; and, as defendant came into this district after hearing that the plaintiff had replevied or treatened to replevy his property, and for the purpose of rescuing it, I think the service should be set aside also, as to him.