### UNITED STATES v. UNVERZAGT.

(District Court, W. D. Washington, N. D. May 7, 1924.)

No. 151–C.

1. Criminal law ⚌99—Abduction from foreign country of fugitive from justice of United States not ground for his discharge on habeas corpus.

That a citizen of the United States, under indictment in a federal court for an offense not extradictable under the treaty between great Britain and the United States, was abducted from a Canadian province and brought into the United States, where he was arrested to answer to the indictment, affords no ground for his discharge on a writ of habeas corpus by a court of the United States.

2. Criminal law ⚌242(4)—Sufficiency of indictment not matter of inquiry in proceedings for removal of defendant to another district.

The sufficiency of the indictment is not a matter of inquiry in proceedings for removal of a defendant to another federal district for trial, unless the defect is so apparent that there is absolutely no question as to its invalidity.

3. Criminal law ⚌242(8)—In proceedings for removal of defendant to another district for trial, certificates held conclusive.

In proceedings for removal of a defendant to another federal district for trial, the certificates of the judge of that district and the clerk of the court that an indictment in words and figures set out has been returned in that court must be accepted as true.

Habeas corpus proceeding by the United States against Charles H. Unverzagt for removal of defendant to another district for trial. On petition by defendant for writ to secure his discharge from custody. Writ discharged.

John A. Frater, Asst. U. S. Atty., of Seattle, Wash., for the United States.

F. C. Reagan, of Seattle, Wash., and Glenn Madison, of Bellingham, Wash., for defendant.

NETERER, District Judge. By his petition the petitioner alleges in substance that he is unlawfully restrained of his liberty, in that the basis of his commitment is an indictment returned in the Western district of New York, proceedings having been instituted to remove him from this district to the district of New York; that he did not commit the crime charged in the indictment, that of using the mails to

defraud, and that he "by artifice and physical violence was abducted and kidnapped from the city of Vancouver, province of British Columbia, Dominion of Canada, by certain purported officials of the United States of America," he being in Vancouver on business with relation to a mine of which he is manager in British Columbia; that he is a citizen of the United States, and that his detention is unlawful; and prays that he be produced in court and, after hearing, discharged.

[1] It is contended by the defendant that, being in British Columbia, a British province, he could not be removed without the permission of the British Columbia authorities; that, having been abducted, he is unlawfully before the court, and this court has no jurisdiction. The offense of which the defendant is charged does not appear to be within the extradition convention between the United States and Great Britain (26 Stat. p. 1508). Article 1 enumerates the causes applicable, and a mail fraud case is not one of them. No asylum is guaranteed to defendant in Canada, and if a treaty did cover the offense charged it would be political, and not judicial, and before the matter could be presented to the court the Congress must make it a rule for the court. The treaty between the United States and Great Britain is a compact depending upon honor between the governments. Any infractions are subject to international negotiation, so far as the party chooses to seek redress. It must be obvious that with this the courts have nothing to do. U. S. v. Rauscher, 119 U. S. 407, at page 418, 7 Sup. Ct. 234, 30 L. Ed. 425.

Chief Justice Marshall in Foster v. Neilson, 27 U. S. (2 Pet.) 253, at 314 (7 L. Ed. 415) said:

"A treaty is, in its nature, a contract between two nations, not a legislative act. It does not generally effect, of itself, the object to be accomplished, especially so far as its operation is infra-territoral, but is carried into execution by the sovereign power of the respective parties to the instrument."

The right of British Columbia to give asylum to the defendant is different from the right of the defendant to demand and insist upon security in such asylum. England or Canada, through its sovereignty, if unlawfully invaded, may demand reparation and a surrender of the abducted party and also the parties committing the offense, and in case of refusal to comply with the demand might resort to reprisals or take any other measures it deems necessary as redress for the past and security for the future. Mahon v. Justice, 127 U. S. 700 at 705, 8 Sup. Ct. 1204, 32 L. Ed. 283.

The defendant, even though abducted from British Columbia, was subsequently arrested in the United States on the indictment or complaint under the fugitive from justice statute, predicated upon an indictment returned in the Western district of New York. The sole question before the court is the legality of his arrest in the United States. On that I do not understand that there is any question. The proceedings before the court, had subsequent to the arrest, appear to be regular. There is no question as to the indictment or identity of the defendant. There is no power vested in this court to dispose of the matter other than as provided by law, the determination of the identity of the defendant and probable cause, and to direct his removal.

Chief Justice Waite, in U. S. v. Rauscher, supra, at 435 (7 Sup. Ct. 249) in a dissenting opinion, said:

"Under ' * * * the law and practice * * * in the United States, a prisoner is not permitted to set up such a defense [violation of the extradition treaty] for the clear reason that he is within the jurisdiction of the court, which has the authority to try him for the offense of which he is charged, and that whether he ought to be tried for an offense other than that for which he has been surrendered is a matter of diplomacy between the two countries, and not a question between the prisoner and the court before which he is being tried.' Foreign Relations of the United States, 1876, 291."

Justice Miller for the court, at page 412 in the same cause (7 Sup. Ct. 237), said:

" * * * That judges could not legally deliver up [a defendant before them], nor could they command the executive to do so."

In Ker v. Illinois, 119 U. S. 436, 7 Sup. Ct. 225, 30 L. Ed. 421, the defendant was abducted from Peru. The Supreme Court at page 443 (7 Sup. Ct. 229) said:

"It was a clear case of kidnapping within the dominions of Peru, without any pretense of authority under the treaty or from the government of the United States."

In that case, as here, the defendant insisted that by his residence he had acquired the right of asylum, that he could only be removed in accordance with the provisions of the treaty, and that this right is one which he can assert in the courts of the United States in all cases, whether the removal took place under proceedings sanctioned by the trial or under proceedings which were in total disregard of that treaty, amounting to an unlawful and unauthorized kidnapping, and at page 443 (7 Sup. Ct. 229), the court said:

"We think it very clear, therefore, that in invoking the jurisdiction of this court upon the ground that the prisoner was denied a right conferred upon him by a treaty of the United States he has failed to establish the existence of any such right."

And at page 444 (7 Sup. Ct. 230) the court said:

"The party himself would probably not be without redress, for he could sue * * * in an action of trespass and false imprisonment, and the facts set out in the plea would without doubt sustain the action. Whether he could recover a sum sufficient to justify the action would probably depend upon moral aspects of the case, which we cannot here consider."

The defendant states he is a citizen of the United States. He is now before the courts of the United States. Canada is not making any application to this court in his behalf or its behalf, because of any unlawful acts charged, and if Canada or British Columbia desires to protest, the question undoubtedly is a political matter, which must be conducted through diplomatic channels. The defendant cannot before the court invoke the right of asylum in British Columbia. In Mahon v. Justice, supra, the Governor of West Virginia in behalf of the state applied to the United States court for the district of Kentucky for a writ of habeas corpus and a return to the jurisdiction of West Virginia of a party abducted, and the court said, among other things:

That "no mode is provided by which a person unlawfully abducted from one state to another can be restored to the state from which he was taken,

if held upon any process of law for offenses against the state to which he has been carried,"

And it further added:

"Whether Congress might not provide for the compulsory restoration to the state of parties wrongfully abducted from its territory upon application of the parties, or of the state, and whether such provision would not greatly tend to the public peace along the borders of the several states, are not matters for present consideration."

So, in this case the jurisdiction of the court is fixed by acts of the Congress, and if a right of the defendant has been violated or the peace or dignity of British Columbia trespassed upon, that is not a matter for this court. The offense for which the defendant stands charged is not within the treaties between the countries, and the mere fact, if true, as stated in the petition, that the defendant was kidnapped from British Columbia, would not give this court power to examine such fact, and, if true, release the defendant. There is no power by which it can be done; that is a matter which rests between the defendant and the parties abducting him, or between the political powers of the British Columbia government and that of the United States.

[2, 3] As to the sufficiency of the indictment which has been suggested upon argument, Judge Lacombe, in Re Benson (C. C.) 130 Fed. 486, stated that it is well settled that the sufficiency of an indictment is not a matter of inquiry in removal proceedings, but rests with the court to which the indictment was returned, and that has been followed uniformly throughout the United States,[1] unless the defect is so apparent that there could be absolutely no question about it. And as to the other objection raised under the certificates of the judge of that district and the clerk of that court, certifying that an indictment has been returned in words and figures following (setting out the indictment), must be accepted by the court as true. The indorsement customarily placed upon an indictment which follows the provisions of the common law is not vital, and omission is not fatal.

The writ is therefore discharged.

[1] Rodman v. Pothier, 264 U. S. 399, 44 Sup. Ct. 360, 68 L. Ed. ——.