**UNITED STATES v. INSULL et al.**
Nos. 26900, 27326.

District Court, N. D. Illinois, E. D.
June 6, 1934.

Dwight Green, of Chicago, Ill., for the United States.

Floyd E. Thompson, of Chicago, Ill., for Insull.

SULLIVAN, District Judge.

This cause comes to this court by pleas to the jurisdiction of the court, filed by the defendant Samuel Insull, and demurrers to the pleas by the government.

It is contended by the pleas to the jurisdiction that the defendant Insull ought not to plead to the indictments because he was illegally and unlawfully brought to this jurisdiction. Among other things, in his pleas, the defendant alleges that in March, 1934, he sailed from Greece on the S. S. Maiotis, which is of Greek ownership and Greek registry, and, while this defendant was a passenger on said steamship, it sailed into the Bosporus for food, fuel, and other supplies; and the police authorities of the republic of Turkey prevented the departure of said steamship.

Thereafter, while this defendant was conducting himself in a peaceable and lawful manner as a passenger on the S. S. Maiotis, and while said steamship was at anchor, and flying the flag of Greece, Turkish police came upon said Greek vessel, and without legal authority, and over the protest of the captain of the S. S. Maiotis, forcibly seized and removed this defendant therefrom without his consent and against his will, and took this defendant to shore and incarcerated him in a prison in Istambul.

Thereafter this defendant was forcibly taken from Istambul to Smyrna by Turkish police, and there taken aboard the S. S. Exilona, without his consent and over his protest, and there delivered to Burton Y. Berry, an agent of the government of the United States of America, who took him into custody as such agent. Said Berry then read to this defendant what purported to be a warrant of the President of the United States of America, but this defendant was not given a copy of said warrant. This defendant says that said purported warrant was illegally issued, and that the attempted service was outside the jurisdiction of the United States.

The seizure of this defendant from the Greek S. S. Maiotis by the Turkish police, and the incarceration of this defendant in a Turkish prison, and the delivery of this defendant onto the American vessel Exilona by the Turkish police, was done at the instance of the government of the United States of America for the purpose of delivering this defendant into the jurisdiction of the United States of America, without the consent and against the will of this defendant, for the purpose of trial under these indictments. All of said acts of the Turkish police so done as the agents of and on behalf of the government of the United States of America were illegal and in violation of the rights of this defendant under the laws of the United States of America, and under international law.

After this defendant, over his protest and without his consent, was delivered on the S. S. Exilona by the Turkish police as aforesaid, he was kept in custody by said Berry and others acting as the agents of and on behalf of the Government of the United States of America, and was brought against his will into the jurisdiction of the United States of America, and delivered to the marshal for the Northern District of Illinois, who placed him under arrest on a bench warrant issued on this indictment.

The government contends that a treaty is not involved in this case. While the court is entirely familiar with the different rule which applies to interstate renditions as distinguished from international extraditions, it is plain, by weight of authority, that one charged with crime, and in the custody of the proper officers in the jurisdiction wherein the indictment against him is pending, cannot escape prosecution under the indictment by showing some irregularity, or even an unlawful kidnapping, by officers of the government, which results in placing him within the jurisdiction of the court where the indictment against him is pending. The court will not inquire into the method of his removal from one jurisdiction to another, and an unlawful removal does not deprive him of any rights secured under the Constitution or laws of the United States. The government relies particularly on the case of Ker v. Illinois, 119 U. S. 437, 7 S. Ct. 225, 30 L. Ed. 421. In that case the court said (at page 439 of 119 U. S., 7 S. Ct. 225, 227): "It is contended * * * that the proceedings in the arrest in Peru, and the extradition and delivery to the authorities of Cook county, were not 'due process of law.' * * * He may be arrested for a very heinous offense by persons without any warrant, or without any previous complaint, and brought before a proper officer; and this may

be, in some sense, said to be 'without due process of law.' But it would hardly be claimed that, after the case had been investigated and the defendant held by the proper authorities to answer for the crime, he could plead that he was first arrested 'without due process of law.' So here, when found within the jurisdiction of the state of Illinois, and liable to answer for a crime against the laws of that state, unless there was some positive provision of the constitution or of the laws of this country violated in bringing him into court, it is not easy to see how he can say that he is there 'without due process of law,' within the meaning of the constitutional provision."

If no treaty were involved in this case, then the rule of law would be as laid down in the case of Ex parte Charles Johnson, 167 U. S. 120, 17 S. Ct. 735, 737, 42 L. Ed. 103, where the Supreme Court said:

"Indeed, there are many authorities which go to the extent of holding that in criminal cases a forcible abduction is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offense, and presents no valid objection to his trial in such court. Ker v. Illinois, 119 U. S. 436, 444, 7 S. Ct. 225 [30 L. Ed. 421]; Ex parte Scott (1829) 9 Barn. & C. 446; Lopez & Sattler's Case [Reg. v. Lopez], 1 Dears. & B. Crown Cas. 525; State v. Smith (1829) 1 Bailey L. [S. C.] 283 [19 Am. Dec. 679]; State v. Brewster (1835) 7 Vt. 118; Dows' Case (1851) 18 Pa. 37; State v. Ross (1866) 21 Iowa, 467.

"Although it has been frequently held that, if a defendant in a civil case be brought within the process of the court by a trick or device, the service will be set aside, and he will be discharged from custody. Union Sugar Refinery v. Mathiesson, Fed. Cas. No. 14,397, 2 Cliff. 304; Wells v. Gurney, 8 Barn. & C. 769; Snelling v. Watrous, 2 Paige [N. Y.] 315; Williams v. Bacon, 10 Wend. [N. Y.] 636; Metcalf v. Clark, 41 Barb. [N. Y.] 45; Stein v. Valkenhuysen, 3 El. Bl. & El. 65; Reed v. Williams, 29 N. J. Law, 385; Carpenter v. Spooner, 2 Sandf. [4 N. Y. Super. Ct.] 717; Pfiffner v. Krapfel, 28 Iowa, 27; Moynahan v. Wilson, Fed. Cas. No. 9,897, 2 Flip. 130; Small v. Montgomery [C. C.] 17 F. 865; Kauffman v. Kennedy [C. C.] 25 F. 785.

In the case of Ford v. United States, 273 U. S. 604, 47 S. Ct. 531, 535, 71 L. Ed. 793, Chief Justice Taft, speaking for the court, said: "The Solicitor General answers, on the authority of Ker v. Illinois, 119 U. S. 436, 7 S. Ct. 225, 30 L. Ed. 421, that an illegal seizure would not have ousted the jurisdiction of the court to try the defendants. But the Ker Case does not apply here. It related to a trial in a state court, and this court found that the illegal seizure of the defendant therein violated neither the federal Constitution, nor a federal law, nor a treaty of the United States, and so that the validity of their trial after alleged seizure was not a matter of federal cognizance. Here a treaty of the United States is directly involved, and the question is quite different."

The defendant contends that a treaty is involved, and that the government of the United States of America cannot enter the jurisdiction of a sovereign nation with which it had a treaty governing the extradition of fugitives from justice, and, without pretending to comply with the proceeding provided for in such treaty, by its agents forcibly seize an alleged fugitive, and by force and without the consent of such alleged fugitive bring him into the jurisdiction of a District Court of the United States of America for trial.

In support of his contention he relies particularly upon the case of Johnson v. Browne, 205 U. S. 309, 27 S. Ct. 539, 51 L. Ed. 816, 10 Ann. Cas. 636, which presents an entirely different situation than is presented in the case at bar. In that case the defendant was extradited from Canada to the United States, and incarcerated in a penitentiary for a different offense than that for which he was extradited.

Assuming that there is a treaty involved, the case of United States v. Unverzagt (D. C.) 299 F. 1015, affirmed Unverzagt v. Benn (C. C. A. 9th Cir.) 5 F.(2d) 492 and 494, certiorari denied 269 U. S. 566, 46 S. Ct. 24, 70 L. Ed. 415, seems to be squarely in point with the facts in the instant case.

In this case the court said:

"By his petition the petitioner alleges in substance that he is unlawfully restrained of his liberty, in that the basis of his commitment is an indictment returned in the Western district of New York, proceedings having been instituted to remove him from this district to the district of New York; that he did not commit the crime charged in the indictment, that of using the mails to defraud, and that he 'by artifice and physical violence was abducted and kidnapped from the city of Vancouver, province of Brit-

ish Columbia, Dominion of Canada, by certain purported officials of the United States of America,' he being in Vancouver on business with relation to a mine of which he is manager in British Columbia; that he is a citizen of the United States, and that his detention is unlawful; and prays that he be produced in court and, after hearing, discharged.

"It is contended by the defendant that, being in British Columbia, a British province, he could not be removed without the permission of the British Columbia authorities; that, having been abducted, he is unlawfully before the court, and this court has no jurisdiction. The offense of which the defendant is charged does not appear to be within the extradition convention between the United States and Great Britain (26 Stat. p. 1508). Article 1 enumerates the causes applicable, and a mail fraud case is not one of them. No asylum is guaranteed to defendant in Canada, and if a treaty did cover the offense charged it would be political, and not judicial, and before the matter could be presented to the court the Congress must make it a rule for the court. The treaty between the United States and Great Britain is a compact depending upon honor between the governments. Any infractions are subject to international negotiation, so far as the party chooses to seek redress. It must be obvious that with this the courts have nothing to do. U. S. v. Rauscher, 119 U. S. 407, at page 418, 7 S. Ct. 234, 30 L. Ed. 425.

"Chief Justice Marshall in Foster v. Neilson, 27 U. S. (2 Pet.) 253, at page 314, 7 L. Ed. 415, said:

"'A treaty is, in its nature, a contract between two nations, not a legislative act. It does not generally effect, of itself, the object to be accomplished, especially so far as its operation is infra-territorial, but is carried into execution by the sovereign power of the respective parties to the instrument.'"

The right of the Hellenic Republic or Turkey to give asylum to the defendant is different from the right of the defendant to demand security in such asylum. The Hellenic Republic or Turkey, through their sovereignties, if unlawfully invaded, may demand reparation and a surrender of the abducted party, and also the parties committing the offense, and, in case of refusal to comply with the demand, might resort to reprisals, or take any other measures it deemed necessary as redress for the past and security for the future.

■ If the rights of the defendant have been violated, or the peace or dignity of the Hellenic Republic or Turkey trespassed upon, that is not a matter for this court, even assuming that the offense for which the defendant stands charged is not within the treaty, if one existed, between the countries; and the mere fact, if true, as stated by defendant, that he was kidnapped from the Hellenic authorities, would not give this court power to examine such fact, and, if true, release the defendant. The court has no such power. That is a matter which rests between the defendant and the parties abducting him, or between the political powers of the governments of Turkey or the Hellenic Republic and that of the United States.

This defendant states that he is a citizen of the United States. He is now before the courts of the United States. Neither the Hellenic Republic nor Turkey are making any application to this court in his behalf, or in their own behalf, because of any unlawful acts charged. And, if either of these governments desire to protest, the question is a political matter which must be conducted through diplomatic channels.

If either the Hellenic Republic or Turkey, by proper complaint, sought to vindicate its laws by protesting against the kidnapping of this defendant within its territory, it is reasonable to assume that the United States would enter into such negotiations with those countries as would secure justice for all parties concerned.

The defendant cannot before this court invoke the right of asylum either in the Hellenic Republic or Turkey, but must stand trial in the jurisdiction in which he was served with process to answer the indictments.

In Snyder v. Commonwealth of Massachusetts, 291 U. S. 97, 54 S. Ct. 330, 338, 78 L. Ed. 674, 90 A. L. R. 575, Justice Cardozo said: "The law, as we have seen, is sedulous in maintaining for a defendant charged with crime whatever forms of procedure are of the essence of an opportunity to defend. Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not

be strained till it is narrowed to a filament. We are to keep the balance true."

The demurrers to the pleas to the jurisdiction of the court are hereby sustained.