C. G. A. HULLHORST, APPELLANT, v. CHRISTIAN T. SCHARNER, APPELLEE.

**Negotiable Instruments:** OBTAINING BY DURESS AND FRAUD. One who obtains a note and mortgage from an irregular practitioner of medicine by means of threats to send him to the penitentiary for having made an alleged indelicate, indecent, and injurious examination of the daughter of the former while treating her for supposed suppression of the menses, obtains no lawful property in such note or mortgage, and the same will be enjoined.

APPEAL from the district court of Platte county. Heard there before GASLIN, J., sitting for GEORGE W. POST, J.

*M. Whitmoyer* and *John G. Higgins*, for appellant, cited: *Foshay v. Ferguson,* 5 Hill, 154. Lord Coke, 2

Inst., 843.    *Inhabitants of Whitefield v. Lowell Longfellow*, 13 Me., 146.    *Richards v. Vanderpoel*, 1 Daly, 71.    *Thurman v. Burt*, 53 Ill., 129.

*G. G. Bowman* and *J. G. Reeder*, for appellee, cited: *Gates v. Shutts*, 7 Mich., 129.    *Vandyke v. Davis*, 2 Mich., 144.    *Weed v. Terry*, 2 Douglass, 344.    *Kercheval v. Doty et al.*, 31 Wis., 476.    *Brooklyn Bank v. Waring*, 2 Sanford, 2.    *Steele v. White*, 2 Paige, 478.    *Simon v. Wilson*, 3 Edwards, 36.    *Wehrinn v. Kuhn*, 61 New York, 623.    *Thompson v. Nelson*, 28 Ind., 431.    *Stewart v. Abrenfeldt*, 4 Denio, 189.    *Moore v. Adams and Newkirk*, 8 Ohio, 372.

COBB, J.

This action was brought by the plaintiff in the court below, for the purpose of enjoining the negotiation and transfer of a certain note and mortgage, and for the delivery up and cancellation thereof for the reason that the same were procured by the defendant from the plaintiff without lawful consideration, but by means of duress and fear of prosecution, imprisonment, and disgrace upon the false charge of having made an indecent assault upon the infant daughter of the said defendant, and for the recovery of fifty dollars by him paid on said note, with interest thereon.

There was a trial and decree for the defendant, and the plaintiff brings the cause to this court by appeal.

It appears, from the testimony in the case, that the plaintiff was, at the date of the transactions material to this case, a preacher of the gospel, of the German Reformed sect, located at Columbus, in this state, and pastor of the German Reformed Church, at that place. That he had also paid some attention to medicine, had studied medicine in a medical college, and claimed to possess considerable skill in the science of medicine. That, while acting as pastor of the said church at Columbus for a period of some few years prior to the circumstances upon which this action

is founded, he had at divers times administered medical treatment, after the homœopathic system, to certain members of his said congregation. That the defendant and his family were members of the said German Reformed Church and congregation' at Columbus.

It further appears that, on or about the last day of July, 1881, the plaintiff was sent for by the defendant to see the daughter of the latter, Lizzie, a girl between fourteen and fifteen years of age, who was then sick. In response to the said call, the plaintiff visited the house of the defendant, where he found the daughter, Lizzie, suffering from a slight fever, headache, and other symptoms, which in the opinion of the plaintiff indicated suppressed menstruation. That after administering medicine to her, and calling to see her two or more times, he came to the conclusion, and so stated to the defendant and his wife, the mother of the girl, that the cause of the girl's suffering was that the menstrual function was coming on, but was prevented by a mechanical obstruction. That after full consultation with the two parents of the girl as to the necessity of making an examination to ascertain the presence of such mechanical obstruction—whether such examination should be made by the plaintiff, or a physician of the city be called in for that purpose, after receiving the consent of the defendant, and of the girl, and in the presence of and with the assistance of the girl's mother, he made what he called a digital examination to ascertain the existence of such mechanical obstruction to the menstrual flow. This examination did not prove satisfactory either to the plaintiff or to the parents of the girl; nor did the patient find any immediate relief. This examination was made on Saturday evening. The plaintiff continued to visit and administer to the patient until Monday evening, following, when he was notified, by a member of the family, that another physician had been called, and that his further services were dispensed with. During that week plaintiff was informed in various ways

that the defendant was greatly dissatisfied with his treatment of the girl, and that he, together with other parties, was engaged, with considerable success, in fomenting an excitement against him for having subjected the girl to said examination, and on the following Monday he went to the office of the attorney of the defendant, and executed the note and mortgage referred to. And also then and there paid to the defendant, or his attorney, fifty dollars on the said note, which was endorsed thereon.

The plaintiff claims, and so testifies, that he was induced to make the note and mortgage solely by reason of the threat of the defendant to send him to the penitentiary for what he had done to the girl, and his fear that such threat would be carried into execution, and his dread of the disgrace to himself and family, and the society under his pastoral care, which would follow such imprisonment. This is denied by the defendant, who alleges that the note and mortgage were given in settlement and compromise of a civil action for damages which he was about to commence against the plaintiff for malpractice in the treatment of his said daughter. The question for this court to decide is, whether the decree of the court below is sustained by the testimony. After a careful examination of the testimony, and fully allowing all proper weight to the double presumption, which must be overcome in an appellate court by a plaintiff who has failed in the court below, we think that the plaintiff is entitled to relief.

There is but little conflict in the testimony. John Stauffer, the county clerk, testified that, on or about the day in question, the defendant came to the house of witness on Sunday evening, " and wanted to know (I quote the language of the witness) if Hullhorst had any property, any real estate, and I told him that he had; that he had the house he was living in then. And then he wanted to know how he could get hold of that property. He wanted me to tell him how to proceed to get that property. I told

him that I could not tell him; that I was not an attorney. And he then made the remark that Dr. Hullhorst had attended his girl, that the girl was sick, that he did not treat her right, and that, if he would settle with him and give him that property, it would be all right, otherwise he would send him to jail and to the penitentiary." This was communicated to the plaintiff the following day. This same threat to have the plaintiff arrested and sent to jail and the penitentiary was made by the defendant to other persons, and by them communicated to the plaintiff, and with surroundings which we think warrant us in assuming that they were made for the purpose of being conveyed to him. And it was these threats, and the fear that they would be carried into effect, that, according to the testimony of the plaintiff and his wife, caused them to execute and deliver the note and mortgage. And there is scarcely any conflict of testimony as to these facts.

The defendant himself was a witness on his own behalf, and upon being interrogated refused to deny the facts or any of them sworn to by Stauffer or of his having made similar threats in the presence of the two Sperrys and M. Bucher, which threats were immediately communicated to the plaintiff and his family by Bucher, through Fred Garber and his sister, Mrs. Koomer. It is true that it is proved on the part of the defendant, by his own oath as well as by that of Mr. Geer, who acted as his attorney in drafting the papers in question, that no threats of arrest or imprisonment were made at the immediate time when the papers were executed. But it was by no means necessary or probably safe to the success of what we are forced to regard as the crafty and insidious scheme of the defendant, that it should be fully developed to his attorney or in his presence.

If, then, the plaintiff was induced to give the note and mortgage solely by reason of the threats of prosecution, imprisonment, and disgrace made by the defendant, in that

case the transaction was lacking in all of the essential elements of a contract. It was without consideration to the plaintiff, and equity will not allow the defendant to enjoy the fruits of it.

Willard, in his work on Equity Jurisprudence—a work cited by both parties in this case, says: "One who induces another who has been illegally arrested to part with his property, through fear of imprisonment, either to settle a civil suit then pending between the parties, or to compromise an alleged felony, obtains no title, and the transaction is void. Actual imprisonment is not necessary to avoid such a transaction; fear of imprisonment is enough. * * * As civilization has advanced, so in degree have the courts more and more strongly been disposed to overthrow everything which has its basis in force, violence, or fraud. Though the law has been ever the same, its enunciation from time to time grows more emphatic. Duress *per minas* is sufficient to avoid contracts made under it, and even the fear of imprisonment is sufficient." Pages 208–9. The author cites many cases which fully sustain the text.

Without considering the testimony of the plaintiff or his witnesses as to what caused him to give the note and mortgage in question, it could scarcely be credited as possible that any sane man would mortgage his homestead for that amount of money in the compromise of a claim for malpractice, where the alleged injury was of the character of that in question. The girl was sick and bedfast when the plaintiff was called to see her. After waiting on her two or three days he failed to relieve her. He was dismissed and another employed. His successor, after a week's effort, also failed to relieve her. For this, it is alleged the defendant claimed from the plaintiff a much larger sum, and obtained, by way of compromise, five hundred and fifty dollars, secured by mortgage on plaintiff's homestead. Even the injury, as claimed by the defendant or his medical witness, bears no just or equitable relation to the term

of the compromise, not to mention the amount said to have been claimed as compensation. A considerable portion of the testimony on the part of the defendant was, as we view it, quite inadmissible for any other purpose than to establish the reasonableness and justice of the defendant's claim for compensation for the injuries to the girl, and we think that it fell far short of answering that purpose.

The decree of the district court is reversed, and a decree will be entered in this court restoring the injunction and making it perpetual and canceling the note and mortgage.

DECREE ACCORDINGLY.

MAXWELL, J., concurred.

LAKE, CH. J., dissented, on the ground that the evidence shows a good consideration for the note and mortgage.