ALFRED E. HARGREAVES ET AL., APPELLANTS, V. LUDWIG KORCEK ET AL., APPELLEES.

FILED APRIL 5, 1895.    No. 5878.

1. **Mortgages:** DURESS: EVIDENCE: HUSBAND AND WIFE. Threats of prosecution and immediate imprisonment of the husband, when used to induce a man and his wife to execute and deliver a mortgage upon their homestead to secure the payment of a judgment against him, where the threats so overcome their wills as to induce them to affix their signatures to such mortgage and thus give a security which they would not voluntarily have executed, are sufficient to constitute duress and avoid the operation of the instrument so obtained.

2. **Duress:** CANCELLATION OF MORTGAGE: EVIDENCE. The evidence examined, and *held*, sufficient to support the findings and decree of the district court.

APPEAL from the district court of Buffalo county. Heard below before HOLCOMB, J.

A statement of the case appears in the opinion.

*Tibbets, Morey & Ferris,* for appellants:

To support the contention that the mortgage was not executed under duress the following cases were cited: *Mundy v. Whittemore,* 15 Neb., 647; *Wilson Sewing Machine Co. v. Curry,* 25 N. E. Rep. [Ind.], 896; *Sornborger v. Sanford,* 34 Neb., 499; *Harmon v. Harmon,* 61 Me., 231; *Plant v. Gunn,* 2 Woods [U. S.], 372; *Thorn v. Pinkham,* 24 Atl. Rep. [Me.], 718; *Mascola v. Montesanto,* 61 Conn., 50; *Hackley v. Headley,* 45 Mich., 569; *Griffith v. Sitgreaves,* 90 Pa. St., 161; *Green v. Scranage,* 19 Ia., 461; *Humphrey v. Humphrey,* 79 N. Car., 396; *Stouffer v. Latshaw,* 2 Watts [Pa.], 167; *Alexander v. Pierce,* 10 N. H., 494; *Meek v. Atkinson,* 1 Bailey [S. Car.], 84; *Compton v. Bunker Hill Bank,* 96 Ill., 301.

*Oldham & Murphy, contra.*

The efforts to convince appellees that Mr. Korcek had committed a crime, and the threats of sending him to the penitentiary for a term of years if the debt was not secured by a mortgage on the homestead, constitute duress, and vitiate the mortgage. (*Meech v. Lee,* 46 N. W. Rep. [Mich.], 383; *Lomerson v. Johnson,* 13 Atl. Rep. [N. J.], 11; *McCormick Harvesting Machine Co. v. Hamilton,* 41 N. W. Rep. [Wis.], 727; *Strang v. Peterson,* 10 N. Y. Sup., 139; *Miller v. Bryden,* 34 Mo. App., 602; *Adams v. Irving Nat. Bank,* 116 N. Y., 606; *Morrison v. Faulkner,* 15 S. W. Rep. [Tex.], 797; *Schultz v. Catlin,* 47 N. W. Rep. [Wis.], 946; *Mayer v. Oldham,* 32 Ill. App., 233; *Winfield Nat. Bank v. Croco,* 26 Pac. Rep. [Kas.], 939; *Morrill v. Nightingale,* 28 Pac. Rep. [Cal.], 1068; *Bryant v. Peck,* 28 N. E. Rep. [Mass.], 678; *Morse v. Woodworth,* 29 N. E. Rep. [Mass.], 525.

*Dryden & Main,* also for appellees.

HARRISON, J.

The appellants commenced an action in the district court of Buffalo county against the appellees to foreclose a mortgage on real estate, alleging, in substance, that on the 11th day of July, 1889, appellants obtained a judgment against Ludwig Korcek in said district court for the sum of $1,093.48, and on the 12th day of July, 1889, Ludwig Korcek and his wife Mary, for the purpose of securing the payment of the indebtedness evidenced by the judgment, executed and delivered to appellants, a mortgage deed conveying to them the south half of the southwest quarter of section 10, township 9 north, of range 15 west, in Buffalo county, Nebraska; that by the terms of the mortgage the judgment was to be paid July 10, 1890. There was an allegation of default in the condition of the mortgage in regard to payment. It was also pleaded that certain persons and firms had, or claimed to have, judgment liens upon the premises described in the mortgage, "And plaintiffs allege that such judgments are not liens upon the above described premises, for the reason that said Ludwig Korcek is a married man and the head of a family, and with his said wife, Mary Korcek, occupies and holds said premises as their homestead, and the same are of a less value than $2,000." The petition closed with a prayer for foreclosure, deficiency judgment, etc. To this petition various judgment and other creditors of Ludwig Korcek filed answer, each setting up a claim and praying such relief as was deemed appropriate in the particular instance, by the pleader. It appears that Ludwig Korcek had been in mercantile business in Kearney, Nebraska, for a number of years and just prior to the execution of the mortgage, the basis of this action, disposed of his stock of merchandise and the business; that the judgment recovered by appellants against Ludwig Korcek which the mortgage was given to secure was for the amount of an account in their

favor for merchandise sold to him.  Korcek's sale of his stock of merchandise was, he alleges, used by appellants as the foundation for the threats made by them to obtain the execution of the mortgage in suit in the case at bar.  This statement will serve to explain the reference in the portion of the answer of appellees quoted herein to the sale of the stock of merchandise.  The Korceks filed separate answers and subsequently filed an answer, in which they joined, and which was treated as an amended answer.  In this they admitted the indebtedness of Ludwig Korcek to the appellants in some amount, the rendition of judgment, the execution of the mortgage, that appellees were husband and wife, the homestead character of the premises described in the petition and their residence thereon, but denied that Mary Korcek was indebted to appellants in any sum or in any manner.  They further answered as follows:

"That on or about the 12th day of July, 1889, * * * a practicing lawyer of the city of Lincoln, Nebraska, and the then attorney of the plaintiffs aforesaid, together with a salesman in the employ of the plaintiffs aforesaid, visited the said Ludwig and Mary Korcek for the purpose of obtaining security on said account; that the said attorney and said salesman, for the purpose of inducing these answering defendants to execute said mortgage as aforesaid, falsely and fraudulently represented to the said Ludwig and Mary Korcek that the said Ludwig Korcek had unlawfully, fraudulently, and feloniously sold and disposed of said stock of merchandise and concealed the same, or a part thereof, for the purpose of defrauding his creditors, and the plaintiffs in particular, and that unless the said Ludwig and Mary Korcek executed and acknowledged to the plaintiffs a mortgage upon the premises hereinbefore described, to secure the said claim, that the said Ludwig Korcek would be arrested, prosecuted, and imprisoned in the penitentiary of the state of Nebraska; that said plaint-

iffs, by their said agents as aforesaid, represented to the said
Ludwig and Mary Korcek that a warrant had already been
issued for the arrest of the said Ludwig Korcek for said
crime as aforesaid, and that the same was in the possession of
the sheriff of Buffalo county and would be served, and the
said Ludwig Korcek immediately taken to jail, unless said
mortgage was executed upon said premises as aforesaid.
*   *   *

"8. These answering defendants allege that it is wholly
untrue that the said Ludwig Korcek had been guilty of dis-
posing of said property for the purpose of cheating and
defrauding his creditors and deny that he had been guilty
of any criminal offenses whatever, and the said defendant
Mary Korcek alleges that at the time the said mortgage was
executed she was wholly ignorant of the facts as to the al-
leged criminal offenses except as advised by the said attor-
ney and the said salesman, agents of the plaintiffs as afore-
said, and was wholly ignorant of the law governing the
same; that she is of German nationality and understands
the English language very imperfectly, and that by reason
thereof, and by reason of said false and fraudulent repre-
sentations of the agents of the plaintiff as aforesaid, and
being, as aforesaid, entirely ignorant of the facts and of the
law, the said Mary Korcek and the said Ludwig Korcek
were in great fear of immediate arrest and incarceration of
the said Ludwig Korcek, husband of the said Mary Korcek,
defendant as aforesaid, and by reason of the said threats and
undue influence, and while thus agitated and put in fear by
reason of the said fraudulent statements and threats and
misrepresentations of the said plaintiffs as aforesaid, and
acting under fear of said imprisonment, these answering
defendants signed said pretended mortgage upon their
homestead without consideration, and not otherwise."

There were some other allegations contained in the an-
swer, but we need not consider them here. The prayer of
the answer was that the mortgage be declared null and void.

and canceled of record.    The reply filed by appellants was
a general denial of all new matter contained in the amended
answer.    A trial to the court of the issues between the ap-
pellants and the Korceks resulted in a finding in favor of
the Korceks and a decree declaring the mortgage null and
void and ordering its cancellation, and plaintiffs in the dis-
trict court have appealed to this court.

There was a sharp and decided conflict in the testimony
adduced with reference to what was said by the various
persons who were present at the home of the Korceks on
the day when the mortgage to appellants was executed, but
there was ample evidence to support the finding of the trial
court, and following the well established rule of this court,
the finding will not be disturbed.    It remains then to de-
termine whether the Korceks were under duress at the time
they signed and delivered the mortgage.    The parties who
represented appellants drove from Kearney to Korcek's
farm, where they arrived about 9 or 10 o'clock in the fore-
noon and remained until 3 or 4 in the afternoon, being the
greater portion of the time they were there engaged in en-
deavoring to obtain the execution of the mortgage, and
which they finally accomplished.    They took with them
from Kearney a law book, the statutes, and—now being
guided in our statements mainly by the evidence which
must have been followed by the trial court to reach the
conclusion it did—it appears that soon after they reached the
farm some law was read from this book to the Korceks, and
the husband was informed that he had committed a crime
and unless he signed the mortgage he would go to the peni-
tentiary, and in Korcek's testimony we find the following:

He said he had a warrant and the sheriff is over across
the creek, and if I did not sign the security mortgage the
sheriff would take me right away from the place.

Q. Take you to jail?

A. He would take me right away; yes, sir.

Mrs. Korcek states that substantially the same was said

to her, and they both testify as to their unwillingness and
refusal to execute the mortgage, but that finally, influenced
by the threats, they did so. There were other witnesses
who gave practically the same account of what transpired
at Korcck's on that day; one of whom, William Wilson,
who went with the parties who were representing appel-
lants, states in his testimony:

They told Korcek they wanted him to sign the mortgage
first, and Korcek very naturally objected. Then they went
into this penitentiary business. They said : " Mr. Korcek,
you have committed a crime, and you are liable to be put
in the penitentiary, and we have a warrant for you which
the sheriff, John Wilson, now holds, and if you don't sign
this mortgage to-day he will arrest you and we will have
you put in the penitentiary." They said: " Hargreaves
Bros. is a strong firm and vindictive, and they will spend
every dollar they have got but what they will put you in
the penitentiary." Mr. Korcek objected and said he hadn't
committed any more crime than any one else who had sold
out had committed. * * *

Q. What was the effect of these threats upon Mrs.
Korcek?

A. Mrs. Korcek cried and took on, of course, but she
hung out after Mr. Korcek consented to sign the mortgage.
She still refused to sign it, and she said that was her home
and she didn't feel like signing it away.

Upon the subject of what constitutes duress and whether
or not it includes threats and such threats as appear to
have been made to the Korceks, there seems to have
existed and exist a diversity and contrariety of opinions,
the result of which has been decisions of courts of last re-
sort, wherein we find the differences of opinion embodied
and expressed, and we have been cited to a number of them,
agreeably to the doctrine of which the threats used to
influence the Korceks to execute the mortgage did not
constitute duress, and would furnish no reason in equity

equity for avoiding the instrument or ordering it canceled; but we are satisfied that the better rule is that where, as in this case, the threat was of immediate imprisonment, accompanied by the statement that the warrant had been issued, whether such statement be true or not, and the threat operates to overcome the will of the party, as in this case, and a settlement is procured which could not have otherwise been obtained, such as resulted here, the execution of a mortgage upon the homestead of the party threatened, which was not subject to the payment of the indebtedness and could not by any process or in any manner, except the voluntary act of the owner, be so subjected, and its further execution by the wife, who did not owe the debt and was not and could not be made liable for its payment, and without whose signature the instrument signed would have been worthless and ineffective, that it constituted duress, and against its results relief might be sought and obtained in a court of equity.

In the case of *Morse v. Woodworth*, 29 N. E. Rep. [Mass.], 525, it appeared that Morse had been book-keeper for Woodworth and was suspected, and probably guilty, of an embezzlement of money belonging to his employer, and by threats of prosecution and imprisonment a settlement was obtained from Morse for the money which he was accused of appropriating. The action was by Morse to, in effect, avoid such settlement. It was admitted that no criminal or civil proceedings had been commenced against him, and his right to avoid his acts rested upon the ground that the threats of imprisonment had moved him to make the settlement and constituted duress, and entitled him to have the settlement annulled. It was held: "Where defendant, by such threats of arrest and imprisonment as would overcome the mind and will of an ordinary man, compels a settlement which plaintiff would not have made voluntarily, plaintiff, even though guilty of the embezzlement, may avoid such settlement on the ground

of duress;" and in the text of the opinion it is stated : "The question of law involved is whether one who believes, and has reason to believe, that another has committed a crime, and who, by threats of prosecution and imprisonment for the crime, overcomes the will of the other, and induces him to execute a contract which he would not have made voluntarily, can enforce the contract if the other attempts to avoid it on the ground of duress. Duress at the common law is of two kinds,—duress by imprisonment and duress by threats. Some of the definitions of duress *per minas* are not broad enough to include constraint by threats of imprisonment; but it is well settled that threats of unlawful imprisonment may be made the means of duress as well as threats of grievous bodily harm. The rule as to duress *per minas* has now a broader application than formerly. It is founded on the principle that a contract rests on the free and voluntary action of the minds of the parties meeting in an agreement which is to be binding upon them. If an influence is exerted on one of them of such a kind as to overcome his will, and compel a formal assent to an undertaking when he does not really agree to it and make that appear to be his act, which is not his, but another's, imposed on him through fear which deprives him of self-control, there is no contract unless the other deals with him in good faith, in ignorance of the improper influence and in the belief that he is acting voluntarily. To set aside a contract for duress it must be shown first that the will of one of the parties was overcome, and that he was thus subjected to the power of another, and that the means used to induce him to act were of such a kind as would overcome the mind and will of an ordinary person. It has often been held that threats of civil suits and of ordinary proceedings against property are not enough, because ordinary persons do not cease to act voluntarily on account of such threats; but threats of imprisonment may be so violent and forceful as to have that effect.   *   *   *   A

contract obtained by duress of unlawful imprisonment is void, and if the imprisonment is under legal process, in regular form, it is nevertheless unlawful as against one who procured it improperly for the purpose of obtaining the execution of a contract, and a contract obtained by means of it is void for duress. So it has been said that imprisonment under a legal process issued for a just cause is duress that will avoid a contract if such imprisonment is unlawfully used to obtain the contract. (*Richardson v. Duncan,* 3 N. H., 508. See, also, *Foshay v. Ferguson,* 5 Hill [N. Y.], 154; *United States v. Huckabee,* 16 Wall. [U. S.], 414; *Miller v. Miller,* 68 Pa. St., 486; *Walbridge v. Arnold,* 21 Conn., 424.) It has sometimes been held that threats of imprisonment, to constitute duress, must be of unlawful imprisonment. But the question is whether the threat is of imprisonment which will be unlawful in reference to the conduct of the threatener who is seeking to obtain a contract by his threat. Imprisonment that is suffered through the execution of a threat, which was made for the purpose of forcing a guilty person to enter into a contract, may be lawful as against the authorities and the public, but unlawful against the threatener, when considered in reference to his effort to use for his private benefit processes provided for the protection of the public and the punishment of crime. One who has overcome the mind and will of another for his own advantage, under such circumstances, is guilty of a perversion and abuse of laws which were made for another purpose, and he is in no position to claim the advantage of a formal contract obtained in that way, on the ground that the rights of the parties are to be determined by their language and their overt acts without reference to the influences which moved them. In such a case there is no reason why one should be bound by a contract obtained by force, which in reality is not his but another's. We are aware that there are cases which tend to support the contention of the defend-

ant. (*Harmon v. Harmon*, 61 Me., 227; *Bodine v. Morgan*, 37 N. J. Eq., 426; *Landa v. Obert*, 45 Tex., 539; *Knapp v. Hyde*, 60 Barb. [N. Y.], 80.) But we are of opinion that the view of the subject heretofore taken by this court, which we have followed in this opinion, rests on sound principles, and is in conformity with most of the recent decisions in such cases, both in England and America. (*Taylor v. Jaques*, 106 Mass., 291; *Hackett v. King*, 6 Allen [Mass.], 58; *Harris v. Carmody*, 131 Mass., 51; *Bryant v. Peck & Whipple Co.*, 154 Mass., 460; *William v. Bayley*, L. R., 1 H. L. [Eng. & Irish App.], 200, 4 Giff. [Eng.], 638, note; *Adams v. Irving Nat. Bank*, 116 N. Y., 606; *Eadie v. Slimmon*, 26 N. Y., 9; *Foley v. Greene*, 14 R. I., 618; *Town of Sharon v. Gager*, 46 Conn., 189; *Bane v. Detrick*, 52 Ill., 19; *Fay v. Oatley*, 6 Wis., 45.) We do not intimate that a note given in consideration of money embezzled from the payee can be avoided on the ground of duress, merely because the fear of arrest and imprisonment, if he failed to pay, was one of the inducements to the embezzler to make the note; but if the fact that he is liable to arrest and imprisonment is used as a threat to overcome his will, and compel a settlement which he would not have made voluntarily, the case is different. The question in every such case is whether his liability to imprisonment was used against him, by way of a threat, to force a settlement. If so, the use was improper and unlawful; and if the threats were such as would naturally overcome the mind and will of an ordinary man, and if they overcame his, he may avoid the settlement." (See, also, *Winfield Nat. Bank v. Croco*, 26 Pac. Rep. [Kan.], 939; *Morrison v. Faulkner*, 15 S. W. Rep. [Tex.], 797; *Morrill v. Nightingale*, 28 Pac. Rep. [Cal.], 1068; *Horton v. Bloedorn*, 37 Neb., 666; *Hullhorst v. Scharner*, 15 Neb., 57.)

The appellants had, prior to the date of the execution of the mortgage, procured the levy of an execution upon some

personal property belonging to the Korceks, and it was in
the possession of the officer who levied the writ at the time
the mortgage was made and delivered, and the appellants
introduced testimony showing that they ordered the per-
sonal property released from the levy and returned to Kor-
cek and that the officer, in compliance with such order,
returned the chattels to Korcek; that it was part of the
agreement at the time of the execution of the mortgage
upon the real estate that the personalty should be released
and returned to Korcek, and was a portion of the consider-
ation for the signing and delivery of the instrument, and it
is contended on behalf of appellants that before the appel-
lees could claim the relief prayed for in the petition on the
ground of duress, conceding it to have been sufficient to
avoid the mortgage, it was incumbent upon them to show
that the personal property which had been released from
the levy by appellants and the lien of the execution had
been returned or tendered to appellants, to be by them
again subjected to a levy and regularly sold thereunder,
and the proceeds applied in payment of their judgment, as
they state was their intention and would have been done
in the first instance had it not been released in accordance
with the terms of the agreement with the Korceks as a
part of the consideration for their mortgaging their home-
stead to appellants.    Counsel for appellees contend that all
evidence of the transaction in reference to the personal
property and the levy of execution upon it and its release
from the levy, etc., was incompetent, not being pleaded or
raised in any manner by the pleading, or so connected with
the issues as joined that it was competent or of any avail
to appellants.    However this may have been, the evidence
on this point was conflicting and the trial court, if it con-
sidered the testimony competent, must have made a finding
on this branch of the case in favor of the Korceks, and
there was sufficient testimony to sustain such a finding,
and we must conclude that there is nothing in this branch

of the case which would warrant us in disturbing the finding and judgment of the trial court. The decree of the district court is

AFFIRMED.

RAGAN, C., not sitting.