HELENA KWENTSKY (formerly HELENA SHUNKA), appellee, v. FRANK SIROVY and FRANK SHUNKA, Appellants.

**Judgments:** FINALITY: ALTERATION: DIRECT ATTACK. The decree in a divorce case is a finality as to all matters at issue or which it was the duty of either party to present; but if the decree as passed by the court was afterwards altered in any material respect, either by the court without authority or by a stranger, it is not binding and may be attacked in a direct proceeding for that purpose.

**Same.** While as a general rule a judgment can not be collaterally attacked for fraud, collusion, perjury and perhaps duress, still if the fraud or duress was practiced in the very act of obtaining the judgment, thus depriving the unsuccessful party of a trial, or if the court was imposed upon by some extrinsic or collateral fraud the judgment may be attacked and set aside.

**Same:** DURESS. Where a stipulation upon which a judgment is based was obtained by duress, and such duress continued preventing the party from appearing in court to object to the stipulation, there was such fraud and duress as will authorize a direct, if not collateral, attack upon the judgment.

**Judgments:** ALTERATION: NOTICE. After the entry and record of a final decree the court has no authority to change the same on the application of one of the parties and to the prejudice of the other, without notice.

**Same:** PRESENCE OF COUNSEL. Where by the entry of a formal decree the rights of parties have become vested and counsel's connection for one of the parties to the case had ceased, he had no authority to consent to an alteration of the decree prejudicial to his client; and his presence when the alteration was made, without notice, did not validate it.

**Judgments:** DURESS: GOOD FAITH PURCHASER. A stipulation procured by duress renders a decree based thereon voidable only, and a good faith purchaser of land from one who acquired title by virtue of such stipulation is not affected by the fraud.

**Judgments affecting real property:** ALTERATION: GOOD FAITH PUR-
7	CHASER. Alteration by the court of a recorded decree affecting
the title to land, without notice to the party whose rights are
prejudiced thereby, is void; and even a good faith purchaser
of the land can not rely thereon.

**Duress of person:** THREAT OF CRIMINAL PROSECUTION: EVIDENCE.
8	The threat of a husband to prosecute his wife and her paramour
for criminal intimacy, whereby he procured from her a stipula-
tion upon which a decree of court was entered setting aside
a deed from himself to the wife, made for a good consider-
ation, was duress of person irrespective of whether the wife
was guilty or innocent of the crime. Evidence held to show
that the stipulation in question was obtained by duress.

**Judgments:** ACTION TO ANNUL: LACHES. A party with full knowl-
9	edge of the facts who has for an unreasonable length of time
delayed action to set aside a decree, based upon a stipulation
obtained by duress, and who has failed to return or offered
to return the consideration for the stipulation, is not entitled
to maintain the action because of laches.

Evans, C. J., dissenting.

*Appeal from Linn District Court.*—HON. F. O. ELLISON,
Judge.

FRIDAY, MAY 7, 1909.

ORIGINALLY this was an action for the partition of sev-
enty-two and one-half acres of land in which plaintiff
claimed to be the owner of an undivided one-half thereof,
and in which she admitted that defendant Sirovy held the
other one-half. Afterward plaintiff asserted title to the
entire tract, and asked that it be quieted against both de-
fendants, and, in the event that could not be done, that she
have judgment quieting her title to one-half thereof and
judgment for the value of the other half against defendant
Shunka. On the issues joined the case was tried to the
court resulting in a decree quieting plaintiff's title to one-
half the land and a judgment against Shunka for the value
of the other half. Defendants appeal.—*Affirmed* in part.
*Reversed* and *remanded* in part.

*S. K. Tracy* and *J. II. & E. C. Preston,* for appellants.

*Clark & Clark* and *Grimm, Trewin & Roberts,* for appellee.

DEEMER, J.—Plaintiff and defendant Frank Shunka were married in the year 1877, and lived together as husband and wife until the year 1899. Shunka acquired title to eighty acres of land about the time of the marriage, and this was improved through the joint efforts and earnings of himself and wife, and finally sold in the year 1881. On September 24, 1881, with the proceeds of the sale, Shunka purchased one hundred and sixty acres of land from one Korab, and on November 16, 1881, he, Frank Shunka, for a valuable, if not an adequate, consideration, conveyed one-half thereof to plaintiff, his wife. Thereafter twenty acres of this land were sold, leaving one hundred and forty acres in the tract owned by plaintiff and her then husband, Shunka, as tenants in common. In the year 1898 one Kwentsky was employed by Shunka to work upon the farm, and he came into the household as a farm laborer. This man Kwentsky soon became unduly intimate with plaintiff, Shunka's wife, and trouble naturally arose between husband and wife regarding this matter. Plaintiff admitted her adulterous relations with the hired man, and, in order that the trouble might be settled, plaintiff and her husband went to see an attorney, one Mekota, with a view to obtaining a divorce and an adjustment of their property rights. Acting under the advice of this attorney, it was agreed that defendant Shunka should bring an action for divorce based upon his wife's adultery, the wife to pay the costs of the proceedings. It was also agreed that plaintiff should deed to Shunka her interest in the westerly sixty-seven and one-half acres of the one hundred and forty acre farm, and that defendant Shunka should convey to plaintiff, his then wife, his interest in the remaining seventy-two and one-half acres

of land (being the property in controversy herein). Conveyances were accordingly made of date August 29, 1899, and the petition for divorce was filed. Afterward, and before the divorce was granted, defendant Shunka concluded to consult an attorney about the matter, and, as a result thereof, he dismissed the divorce action which had been commenced in his name. This was done on October 4, 1899. Thereafter, and on the 12th day of October, 1899, the parties got together by their attorneys, and a stipulation was entered into whereby the divorce action was to be reinstated, and alimony, if awarded, should be on the following basis: The deed made by Shunka to his wife on August 25, 1899, for his interest in the seventy-two and one-half acres of land was to be set aside, and plaintiff was to receive from her husband the sum of $600 in cash and the return of a note which she had made to him for the sum of $150. As this stipulation is important, we here copy the same in full: ·

Whereas, the plaintiff commenced an action for a divorce against the defendant for the October term, 1899, of said court, and whereas on the 4th day of October, 1899, the said plaintiff filed a dismissal of said cause, and whereas upon the filing of such dismissal the said district court dismissed said cause, and whereas it is desired between both the plaintiff and the defendant to have it determined as to whether the plaintiff is entitled to a divorce or not, it is agreed by and between the plaintiff and the defendant that said order of dismissal shall be set aside by said court, and said cause be reinstated for hearing at the present October term, 1899, of said court, this defendant appearing hereby thereto, and it is further stipulated and agreed that, in case the plaintiff shall be enabled to establish to the satisfaction of the court that he is entitled to a divorce from the defendant, then that the alimony and property rights between plaintiff and defendant shall be settled and adjusted as follows, to wit: It is agreed that the deed executed by plaintiff to defendant on the 25th day of August, 1899, for the following described premises,

to wit: The east seventy acres, of the east half of the northwest one-quarter and also the north two and one-half acres of the west ten acres of the east half of the northwest quarter, all in section 20, township 82, range 7 west, Linn County, Iowa, containing seventy-two and one-half acres, more or less, shall be decreed by this court to be set aside, and held for naught, and the title to said premises by this decree to be vested in the said plaintiff, free from any and all claims of the said defendant thereto. It is further agreed that the plaintiff shall pay to the defendant upon the entering of this decree the sum of $600 in money, and deliver to her a certain note for the sum of $150 he now holds against the defendant, which payment of said money and delivery of said note shall be in full of any and all claims for alimony or otherwise which the defendant may have against the said plaintiff in and to any and all of his property both real and personal, the terms of this contract as to alimony to be carried out immediately upon the entering of said decree, and all costs of this action to be paid by the plaintiff. Witness our hands this 12th day of October, 1899. Frank Shunka. Helena Shunka.

The stipulation was made on the day the case was to be heard in the district court, and but a few hours before the decree was entered. The divorce case was reinstated and the matter heard before the district court of Linn County, Iowa, on October 12, 1899, Hon. W. G. Thompson, judge, presiding. A divorce was granted to Frank Shunka, and a decree was prepared and signed by the judge which confirmed the stipulation as to alimony. This decree so far as material read in this wise:

And, in accordance with said stipulation, it is further ordered, adjudged and decreed that the deed executed by plaintiff and defendant on August 25, 1899, and recorded in volume 238, page 168, of the Records of Linn County, Iowa, purporting to convey to defendant the east seventy acres of the east one-half of the southwest quarter, also the north two and one-half acres of the west ten acres of the east one-half of the northwest quarter, all in section 20, township 82, range 7, west of the Fifth P. M., Linn

County, Iowa, be, and the same is hereby, set aside and is held for naught, and the title to said premises revested in plaintiff, free and clear from all right, title or claim of the said defendant therein. That plaintiff shall pay defendant as alimony the sum of $600 in money, and deliver to her $150 note mentioned in said stipulation, which shall be in full of any and all claims for alimony or otherwise which the said defendant may have against the said plaintiff in and to any and all of his property both real and personal [as well as that heretofore held in common by said parties], all of which is finally adjudged and decreed by the court. [Signed] Wm. G. Thompson, Judge 18th Judicial District of Iowa.

The words in brackets were not in the original decree prepared by the judge. The decree as signed by the judge without these words in brackets was duly entered of record on October 13, 1899, and Shunka paid the $600 and delivered the note as agreed by the parties. Three or four days after the formal entry of the decree upon the proper records, but before the record was signed by the judge, the attorneys for the plaintiff in the divorce action, defendant Shunka here, went before Judge Thompson, and without any notice to the defendant in that action, to plaintiff here, or to her attorneys, and, as they say, in order to have the decree more certain as to the property rights of the parties, induced Judge Thompson to enter the words appearing in brackets in the original form of decree and in the formal decree as it then appeared of record. It is claimed on one side, and denied on the other, that the record of the October, 1899, term of court, was formally approved and signed by Judge Thompson at the next January term of court. On February 3, 1903, defendant Shunka sold and conveyed by warranty deed the entire one hundred and forty acres of land to his codefendant Sirovy, and Sirovy immediately entered into the possession thereof. Shortly thereafter one Kubek went to plaintiff herein, and told her that she still had an interest in the one hundred and forty acres of land,

to which she responded that she "did not know it." Kubek then advised her to consult her attorneys, which she did, and on March 27, 1903, she commenced this action, in which she alleged under oath that she was the owner of one-half of the seventy-two and one-half acres of land and defendant Sirovy the owner of the other half. In February, 1904, she filed an amendment to her petition, in which she alleged ownership of one-half the land, and pleaded that the insertion of the words added to the decree by Judge Thompson constituted an alteration thereof, and that they were made without lawful warrant or authority. Afterwards, and in November of the year 1904, she filed an amendment to her petition, in which she claimed ownership of the entire seventy-two and one-half acres against both defendants, averred that the stipulation which constituted the basis of the divorce decree in so far as it related to property rights was and is null and void, because obtained from her through duress and through threats of a criminal prosecution due to her relations with her paramour. She averred that the conveyance from Shunka to Sirovy of the entire one hundred and forty· acres was collusive and fraudulent, and made with intent to cheat and defraud her out of her property. Defendants denied the alleged threats, duress and fraud, pleaded the divorce decree in bar and as a full adjudication of plaintiff's rights in and to the premises, and various other matters which will be noticed during the course of the opinion. Appellants contend that the decree of divorce is a verity, and can not be attacked by such proceedings as were here instituted. They deny all threats and duress, and aver that these matters were fully settled by the decree of divorce. They also say that Judge Thompson had full authority· to change the decree in the manner he did, and that whether he did or not the decree is not subject to attack by such proceedings as were here instituted.

It is claimed that this is a collateral, and not a direct,

attack upon the divorce decree, and that all matters relied upon by plaintiff were fully adjudicated in the divorce action. The decree rendered in the divorce case

1. JUDGMENTS: finality: alteration: direct attack.

is undoubtedly a finality as to all matters which were at issue, or which it was the duty of either party to present before the case went to final decree. But, if the decree was altered after being passed either by the court without authority or by a stranger, it like any other document, may be challenged as not binding upon the parties in interest. In its altered form it is not the decree passed by the court, and it may be challenged by direct proceedings for that purpose. *Wolf v. Bank,* 84 Iowa, 138; *Hall v. Durham,* 109 Ind. 434 (9 N. E. 926, 10 N. E. 581); *Tromble v. Hoffman,* 130 Mich. 676 (90 N. W. 694). Indeed, some cases hold that such a judgment may be collaterally attacked. *Chester v. Miller,* 13 Cal. 558; *Babcock v. McCamant,* 53 Ill. 214; *Emeric v. Alvarado,* 64 Cal. 529 (2 Pac. 418).

The general rule is that a judgment obtained by fraud, collusion or perjury inherent in the cause of action can not be attacked in a collateral proceeding. But, if the fraud or duress is practiced in the very act

2. SAME.

of obtaining or procuring the judgment, the judgment may be collaterally attacked. *Warthen v. Himstreet,* 112 Iowa, 605; *Cowin v. Toole,* 31 Iowa, 513; *Whetstone v. Whetstone,* 31 Iowa, 276; *Pfiffner v. Krapfel,* 28 Iowa, 27. As to all matters of fraud, collusion, perjury and perhaps duress inhering in the decree or judgment, the judgment is a finality, and can not be attacked save upon appeal, writ of error, or other methods of review. But, if it be shown that the court has been imposed upon by some extrinsic or collateral fraud, the judgment may be attacked. The fraud or duress which will authorize the setting aside of a decree or judgment must be such as really prevented the unsuccessful party from having a trial. *Graves v.*

*Graves,* 132 Iowa, 199. In *U. S. v. Throckmorton,* 98 U.
S. 65 (25 L. Ed. 93) it is said:

> But there is an admitted exception to this general rule
> in cases where, by reason of something done by the success-
> ful party to a suit, there was, in fact, no adversary trial
> or decision of the issue in the case. Where the unsuccess-
> ful party has been prevented from exhibiting fully his case
> by fraud or deception practiced on him by his opponent, as
> by keeping him away from court, a false promise of a com-
> promise, or where the defendant never had knowledge of
> the suit, being kept in ignorance by the acts of the plain-
> tiff, or where an attorney fraudulently or without authority
> assumes to represent a party and connives at his defeat,
> or where the attorney regularly employed corruptly sells out
> his client's interest to the other side—these and similar
> cases which show that there has never been a real contest
> in the trial or hearing of the case are reasons for which a
> new suit may be sustained to set aside and annul the former
> judgment or decree, and open the case for a new and fair
> hearing—[citing many cases]. In all these cases and
> many others which have been examined relief has been
> granted on the ground that, by some fraud practiced direct-
> ly upon the party seeking relief against the judgment or
> decree, that party has been prevented from presenting all
> of his case to the court.

In applying this rule to the case at bar, it will be ob-
served that the alleged duress was practiced upon plaintiff
and the written agreement as to alimony was procured on
the very day the decree was entered. This
duress is, of course, presumed to have lasted

**3. Same: duress.**

for some appreciable length of time, and the same duress
which led to the execution of the agreement would of neces-
sity have kept plaintiff out of court, and prevented her
from challenging the agreement. Of course, plaintiff could
not complain of the document as being false or as having
been secured by fraud unless she was in some manner
prevented from challenging the same in court. But, if ob-
tained by duress, and this duress also kept her from ap-

pearing in court to object to the stipulation, then there was such fraud and duress as will enable her to set aside the stipulation upon direct if not by collateral attack. The authorities heretofore cited clearly sustain these propositions. See, also, *Fairbanks v. Snow,* 145 Mass. 153 (13 N. E. 596, 1 Am. St. Rep. 446); *De Louis v. Meek,* 2 G. Greene, 55; *Foote v. De Poy,* 126 Iowa, 366. There is no occasion to determine whether or not plaintiff might have attacked the divorce decree collaterally, for we are constrained to hold that this proceeding is a direct attack upon that decree. See, as sustaining this view, *Hintrager v. Sumbargo,* 54 Iowa, 604; *Johnson v. Nash Co.,* 121 Iowa, 175; *Searle v. Fairbanks,* 80 Iowa, 307; *Donahue v. McCosh,* 81 Iowa, 296; *Lumpkin v. Snook,* 63 Iowa, 515; *Uehlein v. Burk,* 119 Iowa, 742; *Brakke .v. Hoskins,* 98 Iowa, 233.

Having stated the primary questions of law involved we now go more directly to the exact points for decision. The original divorce decree was prepared and signed by the judge trying the case, and this

**4. Judgments:**
**alteration:**
**notice.**

was properly spread upon the proper records of the court. Some three or four days thereafter, but during the same term, plaintiff's attorneys in that action went before the judge trying the case, and without notice to the other party or to her attorney induced the trial judge to enter into the decree as signed by him. the words "as well as that heretofore held in common by said parties." As final decree had been entered of record in the divorce proceedings, the trial court was without authority to change the same upon application of the plaintiff therein and to the prejudice of the defendant without notice. This is fundamental doctrine. *Hawkeye Ins. Co. v. Duffie,* 67 Iowa, 175; *Callanan v. Lewis,* 79 Iowa, 452; *Okey v. Sigler,* 82 Iowa, 94; *Le Grand v. Fairall,* 86 Iowa, 211; *Iowa Savings Ass'n v. Chase,* 118 Iowa, 51; *Perry v. Kaspar,* 113 Iowa, 268; *Wetmore v. Harper,* 70 Iowa,

346; *McConnell v. Avey,* 117 Iowa, 282. None of the cases cited and relied upon by appellant's counsel run counter to these views. In some of them no final judgment had been ordered as in this case. In others the orders were interlocutory and made at a time when the trial court had full control of its record, and in others notice was given or the adverse party was present when the corrected entry was made. See *Brace v. Grady,* 36 Iowa, 353; *Porter v. McBride,* 44 Iowa, 479; *Carpenter v. Zuver,* 56 Iowa, 391; *McConnell v. Avey,* 117 Iowa, 282. It is said that defendant's counsel in the divorce proceedings was present when the change was made in the decree, although this was denied by the attorney himself, who was a witness on this trial. Conceding that the attorney was present, he was not there pursuant to any notice, and he testified that his employment ceased with the rendering of the first decree. Appellant's counsel concede that the alteration materially changed or affected the decree; and for the purpose of our present inquiry it must be assumed that the change was not authorized by the stipulation signed by the parties. If it did not depart from the stipulation, then there was either no purpose in having the change made or the change when made was of no consequence because it was not a material alteration.

Counsel's argument must, of course, be based upon the proposition that the change was a material departure from the terms of the stipulation. That being true, counsel for defendant in the divorce proceedings had no authority after the final decree was entered to consent to a change in that decree and to an alteration which would deprive his former client of any rights under the stipulation. Counsel's connection with the case ceased with the first formal and record entry of the decree. In other words, the rights of the parties having become vested thereby counsel was without power thereafter to give away any of his client's rights. This proposi-

5. SAME: presence of counsel.

tion is also well fortified by authority. *Ohlquest v. Farwell,*
71 Iowa, 231; *Rhutasel v. Rule,* 97 Iowa, 20; *Bank v.
Bourdelais,* 109 Iowa, 497; *Martin v. Insurance Co.,* 85
Iowa, 643; *Bigler v. Toy,* 68 Iowa, 688; *Kilmer v. Galla-
her,* 112 Iowa, 583; *Whitestown v. Zahn,* 9 Ind. App. 270
(36 N. E. 653). Even the presence of the attorney of
record in the original suit would not alone constitute an
appearance to a motion filed after the decree has been prop-
erly entered in the case. *Iowa Ass'n v. Chase,* 118 Iowa,
51.

The petition in the divorce proceedings made no ref-
erence to property rights, and there was no prayer for
alimony or division of the property. All that was asked
was a decree of divorce and for general equitable relief.
No facts were alleged which entitled either party to any
other relief than an ordinary decree of divorce. That
part of the decree relating to alimony, property or prop-
erty rights was based wholly upon the stipulation between
the parties which we have heretofore quoted. That simply
authorized the court to set aside the deed made by defend-
ant Frank Shunka to his wife, the plaintiff herein, of the
seventy-two and one-half acres of land. That deed was to
an undivided one-half of said lands. The deed was not of
the entire premises, but of an undivided one-half thereof,
and the deed from Mrs. Shunka to her husband of the
sixty-seven and one-half acres which was executed at the
same time was of an one-half; the intent manifestly being
to make a voluntary partition of the one hundred and forty
acres theretofore held in common. When the deed of the
undivided one-half of the land from Shunka to his wife was
set aside, she, the wife, still had either full title to the
seventy-two and one-half acres in virtue of the voluntary
partition or to an undivided one-half of the whole thereof,
because of the fact that the voluntary partition became
nugatory by the setting aside of one of the deeds made to
accomplish that partition. Appellant's counsel practically

admit that, but for the alteration made in the decree, plaintiff would be entitled to an undivided one-half of the seventy-two and one-half acres of land. We need not, therefore, concern ourselves with the effect of the decree eliminating the words inserted therein by the direction of the trial judge.

Indeed, if that decree without its amendment deprived plaintiff of all her rights in and to the seventy-two and one-half acres of land, there would be nothing to consider save the effect of the alleged duress under 6. JUDGMENTS: which the stipulation was obtained. And duress: good faith purchaser. this duress, even if established, would under the circumstances disclosed have no effect upon the rights of Sirovy under his purchase; for it is conceded that he is a good-faith purchaser without notice of the alleged duress.

It is claimed, however, that the alteration in the decree, even if material, can not affect defendant Sirovy, for the reason that he purchased the land in good faith from his codefendant Shunka for value, and without 7. JUDGMENTS AFFECTING REAL PROPERTY: out any notice of the alleged alteration of the alteration: decree. There is no merit in this contention. good faith purchaser. The alteration made in the decree was without notice to the adverse party, and the trial court had no jurisdiction to make it. If without jurisdiction, it was void and of no effect, and, if void, no one can rely thereon. A void act is quite different from a voidable one. If the act be void, it is of no effect as to any one, and may be challenged at any time and by any person interested either by direct or collateral proceedings. It is fundamental that a judgment or decree of court rendered without jurisdiction is of no effect so that defendant Sirovy under the conceded facts and the law applicable thereto took nothing more under his deed than an undivided one-half of the seventy-two and one-half acres of land, the other half being still in the plaintiff in virtue of her original deed from her husband executed in the year 1881.

II.   The plea of duress in the procuration of the stip-
ulation whereby the deed from Shunka to his wife of date
August 25, 1899, was set aside, presents an entirely differ-
ent question insofar as the rights of Sirovy are concerned.
A contract made or a judgment obtained under duress is
not strictly speaking void.  As it may be ratified or affirmed,
it is regarded as voidable only.  *Fairbanks v. Snow,* 145
Mass. 153 (13 N. E. 596, 1 Am. St. Rep. 446) ; *Sanford v.
Sornborger,* 26 Neb. 295 (41 N. W. 1102).  Duress has
the same effect upon a contract or judgment as fraud.  In
each case consent is present, although not such free consent
as the law requires; and, consent being present, neither
a contract nor a judgment can be avoided for either duress
or fraud against the rights of third persons acquired for
value and without notice.  *Bartle v. Breniger,* 37 Iowa,
139.  As it is conceded that defendant Sirovy is a good-
faith purchaser for value, he can not be affected by the
plaintiff's plea of duress.  This issue is material, however,
in so far as it affects defendant Shunka; for he has sold
all the land, the sixty-seven and one-half as well as the
seventy-two and one-half acres, to Sirovy.  If he obtained
the stipulation setting aside his deed to an undivided one-
half of the seventy-two and one-half acres through duress,
and has obtained full consideration for the same, plaintiff is
entitled to judgment against him for one-half the considera-
tion received by him for the seventy-two and one-half acres,
or for the value thereof at her election, unless there be
some other reason for denying the relief asked.

Defendants contend, however, that there is no showing
of any duress in that no threats were made save of lawful
arrest.  In other words, it is contended that, as plaintiff was

8. DURESS OF
PERSON:
threat of
criminal
prosecution:
evidence.

concededly guilty of adultery, a threat to
prosecute her or her paramour for that crime
does not constitute duress.  The broad claim
is made that there can be no duress unless there is threat
of unlawful arrest, and that, if the person threatened is in

fact guilty, there is no duress. No doubt, this was the rule generally prevailing in the older authorities, but the modern cases almost universally hold that threats of lawful arrest for an unlawful purpose may amount to duress. As to what constitutes duress under modern notions, see, *Callendar v. Loos*, 142 Iowa, 1. It is not necessary in this state that the threat be of unlawful arrest; that is to say, it does not matter whether the person threatened be guilty or innocent. *Smith v. Steely*, 80 Iowa, 738; *Giddings v. Bank*, 104 Iowa, 676; *Henry v. Bank*, 131 Iowa, 100, and cases cited; *Joyce v. Rohan*, 134 Iowa, 14. See, also, *Lomerson v. Johnson*, 44 N. J. Eq. 93 (13 Atl. 8); *Central Bank v. Copeland*, 18 Md. 305 (81 Am. Dec. 597); *Bank v. Sargent*, 65 Neb. 594 (91 N. W. 595, 59 L. R. A. 296).

Some apparent exceptions may exist where one is entitled to the return of property unlawfully taken from him; but these exceptions are perhaps apparent rather than real, and are not in any event applicable to this case. Here plaintiff had nothing from her husband to which she was not entitled. Under the testimony threats were made to arrest both her and her paramour in order to induce her to sign the stipulation, whereby a deed theretofore executed to her by her husband for a good if not an adequate consideration was to be set aside and held for naught. That this constituted duress of person is held by the following among other cases not already cited: *Morse v. Woodworth*, 155 Mass. 233 (27 N. E. 1010, 29 N. E. 525); *Hargreaves v. Korcek*, 44 Neb. 660 (62 N. W. 1086); *Briggs v. Withey*, 24 Mich. 136; *Meech v. Lee*, 82 Mich. 274 (46 N. W. 383); *Bueter v. Bueter*, 1 S. D. 94 (45 N. W. 208, 8 L. R. A. 562); *Bank v. Kusworm*, 88 Wis. 188 (59 N. W. 564, 26 L. R. A. 48, 43 Am. St. Rep. 880). The true rule in this respect is so well stated in *Morse v. Woodworth, supra,* that we here quote as follows from that opinion:

It has sometimes been held that threats of imprisonment to constitute duress must be of unlawful imprisonment; but the question is whether the threat is of imprisonment which will be unlawful in reference to the conduct of the threatener who is seeking to obtain a contract by his threat. Imprisonment that is suffered through the execution of a threat which was made for the purpose of forcing a guilty person to enter into a contract may be lawful as against the authorities and the public, but unlawful as against the threatener, when considered in reference to his effort, to use for his private benefit processes provided for the protection of the public and the punishment of crime. One who has overcome the mind and will of another for his own advantage under such circumstances is guilty of a perversion and abuse of laws which were made for another purpose, and he is in no position to claim the advantage of a formal contract obtained in that way, on the ground that the rights of the parties are to be determined by their language and their overt acts without reference to the influences which moved them. In such a case there is no reason why one should be bound by a contract obtained by force which in reality is not his, but another's. We are aware that there are cases which tend to support the contention of the defendant. *Harmon v. Harmon*, 61 Me. 237; *Bodine v. Morgan*, 37 N. J. Eq. 426, 428; *Landa v. Obert*, 45 Tex. 539; *Knapp v. Hyde*, 60 Barb. (N. Y.) 80. But we are of opinion that the view of the subject heretofore taken by this court which we have followed in this opinion rests on sound principles, and is in conformity with most of the recent decisions in such cases, both in England and America. *Taylor v. Jaques*, 106 Mass. 291; *Hackett v. King*, 6 Allen (Mass.) 58; *Harris v. Carmody*, 131 Mass. 51 (41 Am. Rep. 188); *Bryant v. Whipple Co.*, 154 Mass. 460 (28 N. E. 678); *Williams v. Bayley*, L. R. 1 H. L. 200 (4 Giff. 638, 663), note; *Adams v. Bank*, 116 N. Y. 606 (23 N. E. 7, 6 L. R. A. 491, 15 Am. St. Rep. 447); *Eadie v. Slimmon*, 26 N. Y. 9 (82 Am. Dec. 395); *Foley v. Greene*, 14 R. I. 618 (51 Am. Rep. 419); *Sharon v. Gager*, 46 Conn. 189; *Bane v. Detrick*, 52 Ill. 19; *Fay v. Oatley*, 6 Wis. 42. We do not intimate that a note given in consideration of money embezzled from the payee can be avoided on the ground of duress merely because the fear

of arrest and imprisonment if he failed to pay was one of the inducements to the embezzler to make the note; but, if the fact that he is liable to arrest and imprisonment is used as a threat to overcome his will, and compel a settlement which he would not have made voluntarily, the case is different. The question in every such case is whether his liability to imprisonment was used against him by way of a threat to force a settlement. If so, the use was improper and unlawful; and, if the threats were such as would naturally overcome the mind and will of an ordinary man, and if they overcame his, he may avoid the settlement.

Plaintiff gave testimony of threats made by defendant Shunka and his attorneys sufficient in themselves to establish the duress pleaded, and defendant Shunka did not go on the witness stand to deny them. On the contrary, he pleaded in his answer, which was under oath, that plaintiff, when threatened with prosecution, expressed an anxiety to be divorced from him, and proposed to relinquish all interest that she had in any real estate in which she had an interest. There is testimony to the effect that the attorney who represented Shunka did not threaten plaintiff with a criminal prosecution; but on cross-examination he stated that he did not think he said to her that, unless she gave up the property, he would prosecute her; that he was pretty sure he did not. This is the extent of the testimony offered by defendants. As against this is the positive testimony of plaintiff and her attorney as to threats made of a criminal prosecution. There is enough testimony to justify the conclusion of the trial court that the stipulation was obtained by duress; and as the trial judge had the advantage of seeing the witnesses, and as defendant did not see fit to take the stand to deny the matter, but virtually admitted in his answer that there was duress, we are constrained to affirm the holding on the issue of duress.

This stipulation was obtained in October of the year 1899, and plaintiff made no attack thereon until she filed an amendment to her petition on November 14, 1904, some

time after defendants had answered the original petition
filed and amended by plaintiff—March 27,
1903, and February 19, 1904, respectively.
Plaintiff received the $600 awarded her by
the divorce decree and the return of the $150 note, and these
she never returned to her husband. She was informed that
she might have some interest in the land as early as Feb-
ruary of the year 1903, and was undoubtedly advised as to
the nature of the stipulation. She must have known of the
duress practiced upon her in the year 1899, and she un-
doubtedly had a right of action on account of that duress
from the time of the entry of the decree in the divorce case.
When told that she still had some right in the land, she
said that she did not know that she had. Even after her
attorneys had examined the decree, she did not then claim
there was any duress, and this issue did not get into the case
until November of the year 1904, when it was introduced
as an amendment to the petition. She did not then or in
any subsequent proceedings offer to return the money or
the note delivered to her, nor did she at any time offer to
do so in her pleadings. Even though the action may not
be barred by the statute in so far as it involves the ques-
tion of duress, we are of opinion that plaintiff has been
guilty of such laches and has so conducted herself by hold-
ing on to what was paid her that she ratified the stipula-
tion, and is estopped from now denying its validity. Her
first pleadings were bottomed on the thought that she was
entitled to but a one-half interest in the property in con-
troversy, and, having accepted and used the money and note
received by her as part of and in consequence of the stipu-
lation, she is in no position to complain of it. See, as sus-
taining this view, *Bartle v. Breniger,* 37 Iowa, 139; *Sorn-
borger v. Sanford,* 34 Neb. 498 (52 N. W. 368).

It is argued that plaintiff did not know of the effect
of the duress until she learned of the conveyance to Sirovy.
It is true that she may not have known of the full effect

9. JUDGMENTS:
action to
annul: laches.

thereof until that time, although she does not so testify; but she did know of the coercion from the beginning, and was required within some reasonable time after the compulsion had been exercised to begin action to have the stipulation set aside. She was not justified in waiting until her husband sold the property. So far as shown, he was in possession and occupancy of all the property from the time of the divorce and was "flying a hostile flag," and treating the land as his own. It was her duty to rescind the stipulation because of duress within a reasonable time and return the money she received, or to bring action to set aside the judgment for fraud within the same time, if not within one year, as the statute (Code, section 4094) requires. As she did not do this, she is not entitled to have the stipulation set aside for duress. See, as sustaining these views, *Grymes v. Sanders,* 93 U. S. 55 (23 L. Ed. 798); *Eberstein v. Willets,* 134 Ill. 101 (24 N. E. 967); *Lyon v. Waldo,* 36 Mich. 346; *Schee v. McQuilken,* 59 Ind. 269; *Evans v. Montgomery,* 50 Iowa, 325; 10 Am. & Eng. Ency. of Law, 337, and cases cited; *Bank v. Wheelock,* 52 Ohio St. 534 (40 N. E. 636, 49 Am. St. Rep. 738). The decree in so far as it is bottomed on duress of the husband is erroneous, and the personal judgment against him must be reversed and set aside. Some other matters are argued, but, as they are not controlling or do not properly arise upon the record, we do not consider them.

The case as to defendant Sirovy must be affirmed and as to defendant Shunka it must be reversed. Plaintiff will pay one-half the costs of this appeal and defendant Sirovy the other one-half.

*Affirmed* on defendant Sirovy's appeal and *reversed* and *remanded* on defendant Shunka's appeal.

EVANS, C. J., dissents from the affirmance on Sirovy's appeal.